**CEBCOR SERVICE CORPORATION,**
Appellant

v.

**LANDSCAPE DESIGN AND CONSTRUCTION, INC., Maintain Services, Inc. and Sunbelt Trees, Inc., Appellees.**

No. 05–07–00092–CV.

Court of Appeals of Texas,
Dallas.

Nov. 17, 2008.

Robert Bennett, Leesa P. Thomas, The Law Offices of Leesa P. Thomas, Dallas, TX, for Appellant.

Joseph Ackels, Henry J. Ackels, Ackels, Ackels & Ackels, Dallas, TX, for Appellee.

Before Justices FITZGERALD, LANG–MIERS, and MAZZANT.

## OPINION

Opinion by Justice FITZGERALD.

Cebcor Service Corporation appeals the trial court's judgment in favor of Landscape Design and Construction, Inc., Maintain Services, Inc., and Sunbelt Trees, Inc. The trial court's judgment made appellant liable for a default judgment rendered against "Consolidated Employment Benefit Service Corporation a/k/a Cebcor Service Corporation." Appellant brings seven issues asserting (a) it was never served in the underlying action, (b) whether appellant was the alter ego of Consolidated Employment Benefit Service Corporation was not relevant to the case, (c) appellees should not have been permitted to try the issue of alter ego without pleading it or giving appellant fair notice of the alter-ego claim, and (d) appellees made prejudicial

assertions in their jury argument. We affirm the trial court's judgment.

## BACKGROUND

In their 2000 lawsuit, appellees alleged they entered into identical contracts in 1990 with Consolidated Employment Benefits Corporation (Consolidated), an Illinois corporation operating an employee leasing company under the trade name "CEBCOR." Consolidated agreed to provide appellees with employees, and appellees agreed to pay Consolidated's actual costs of the employees, plus an administrative fee. Consolidated was a "sole employer" leasing company, meaning the employees leased to clients (such as appellees) were the employees of Consolidated only and not the clients. In 1991, appellant, Cebcor Service Corporation, was formed to be a "co-employer" leasing company, meaning both appellant and its clients were the employers. Appellant and Consolidated had an agreement that appellant would handle some administrative functions for Consolidated, including payroll and worker's compensation.

In late 1997, Consolidated entered into an agreement to sell its assets to Transport Labor Contract/Leasing, Inc. To facilitate the sale, appellees were asked to sign an addendum containing a series of amendments to the 1990 contracts, and appellees agreed. The addendum stated that the 1990 contracts were between appellees and "Cebcor Service Corporation," instead of Consolidated. In February 1998, after the sale of its assets to Transport Leasing Company, Consolidated was dissolved. Consolidated's articles of dissolution filed with the Illinois Secretary of State provide that the address on which service of process against it may be mailed by the secretary of state was "CEBCOR, 300 W. Adams St., # 609, Chicago, IL 60606." Consolidated left the same address for service of process with the Texas Secretary of State in its 1995 application for certificate of withdrawal from transacting business in Texas. In the summer of 1998, appellant moved its offices to a new address on Canal Street in Chicago; however, Consolidated's Illinois articles of dissolution and Texas application for certificate of withdrawal were not amended to include the new address for mailing service of process.

After several years, appellees discovered they had been overcharged for the costs of the employees by about $268,000. On March 29, 2000, appellees sued "Consolidated Employment Benefits Corporation" alleging several causes of action, including breach of contract, fraud, and negligence. The petition stated Consolidated was registered to do business in Texas "but is believed to be a corporation duly formed and existing under the laws of the state of Illinois," has no registered agent in Texas, its home office and principal place of business were at 300 W. Adams Street, Chicago, Illinois, and it could be served with process by service upon the Texas Secretary of State. Appellees served the Texas Secretary of State, who forwarded the original petition to "Consolidated Employment Benefits Corporation, 300 W. Adams Street, Chicago, IL." The process was returned to the secretary of state on June 20, 2000 bearing the notation, "No Forwarding Order On File." Consolidated did not file a response to the petition, and appellees moved for a default judgment.

On September 22, 2000, the day of the hearing on appellees' motion for a default judgment, appellees filed their first amended original petition. This petition was nearly identical to the original petition except for alleging the defendant was "Consolidated Employment Benefit Service Corporation a/k/a Cebcor Service Cor-

poration."[1] No party was served with the amended petition. That same day, appellees obtained a default judgment on the amended petition. This judgment awarded appellees $528,055.61 plus attorney's fees against "Consolidated Employment Benefit Service Corporation a/k/a Cebcor Service Corporation."

In early 2003, a constable went to appellant's offices to execute the judgment. Appellant sent the constable the papers documenting the sale of Consolidated's assets to Transport Labor Contract/Leasing, Inc.

On February 12, 2003, appellant filed this suit against appellees. Appellant alleged two causes of action. Appellant first alleged a bill of review asserting the underlying default judgment against it was void because it was not served with process. The second cause of action requested a declaratory judgment "that the Default Judgment is void, does not apply to CEBCOR Service Corporation, was improperly and fraudulently obtained without proper service, and was obtained by inserting a new defendant into the case without notifying the Court or obtaining service in the original case." (Emphasis omitted.) From pleadings included in the appellate record and from statements made during the trial, it appears that the issue pursued by appellees during the three years of discovery and pretrial proceedings was that appellant was the alter ego of Consolidated and was responsible for the conduct of Consolidated. The day before trial began, appellees filed a supplemental answer stating, "Defendant [sic] contends that Plaintiff was served because Consolidated and Cebcor [Service Corporation] are alter egos of one another, or each other and are the responsible party for one another, or each other." The trial court submitted one question to the jury: "Is CEBCOR Service Corporation responsible for the conduct of Consolidated Employment Benefits Corporation?" The jury answered, "Yes."

The trial court's judgment included findings of fact and conclusions of law that appellant was responsible for Consolidated's conduct; appellant perpetuated an actual fraud on appellees; appellant was the alter ego of Consolidated; and appellant and Consolidated were "one in the same entity, which means they are one company doing business under both names." The court declared the underlying judgment was valid and collectible against the assets of any entity doing business under the name of Consolidated, appellant, or their successors in interest. The court rendered a take-nothing judgment on appellant's bill of review.

## BILL OF REVIEW

■ Bill of review plaintiffs usually must prove three elements: (1) a meritorious defense to the underlying cause of action, (2) which the plaintiffs were prevented from making by the fraud, accident, or wrongful act of the opposing party or official mistake, (3) unmixed with any fault or negligence on their own part. *Caldwell v. Barnes,* 154 S.W.3d 93, 96 (Tex.2004); *Tarrant Restoration v. TX Arlington Oaks Apartments, Ltd.,* 225 S.W.3d 721, 728 (Tex.App.-Dallas 2007, pet. dism'd w.o.j.). Bill of review plaintiffs are relieved of proving the first two elements, and the third element is proved when the plaintiff proves lack of service. *Caldwell,* 154 S.W.3d at 96–97; *Tarrant Restoration,* 225

---

1. Besides the addition of an "a/k/a" to the name of the defendant, the only difference between the original and amended petition appears to be that the original petition requested attorney's fees under a variety of statutes, including the Texas Condominium Act, and the amended petition omits reference to the Texas Condominium Act.

S.W.3d at 728–29. In this case, appellant's bill of review was based on lack of service, so if it conclusively proved lack of service, then it is entitled to judgment on its bill of review.

■■■ In its first issue, appellant asserts the trial court should have ruled that appellees' "admitted failure to serve process on [appellant in the underlying case] made the default judgment against [appellant] void as a matter of law." Appellant bases this argument on the stipulation of appellees' counsel at the close of trial that appellees "did not serve the [underlying] first amended original petition on CEB-COR Service Corporation on or about September 22nd, 2000." This stipulation, however, was not a stipulation of lack of service of the original petition in the underlying case. Furthermore, "[s]ervice of an amended petition on a party that has not appeared is necessary only when a plaintiff 'seeks a more onerous judgment than prayed for in the original pleading.'" *Fidelity & Guar. Ins. Co. v. Drewery Constr. Co.*, 186 S.W.3d 571, 574 (Tex. 2006) (quoting *Weaver v. Hartford Accident & Indem. Co.*, 570 S.W.2d 367, 370 (Tex.1978)). In this case, the original and amended petitions sought the same relief. Thus, service of the amended petition was not necessary. We overrule appellant's first issue.

In its second, sixth, and seventh issues, appellant asserts the trial court should have determined appellees' alter ego theory was not relevant to appellant's bill of review case. To prevail on its bill of review, appellant had to prove it was not served. If service of process on an entity also constitutes valid service on an alter ego of that entity, then alter ego was relevant to appellant's bill of review case.[2]

In *Gentry v. Credit Plan Corp.*, 528 S.W.2d 571 (Tex.1975), the plaintiffs sued a subsidiary corporation within the limitations period, and it sued the parent corporation more than a year after limitations had expired. *Id.* at 572. The parent corporation asserted the defense of limitations. The trial court determined, based on the jury's verdict, that the parent corporation was the alter ego of the subsidiary, and the court rendered judgment on the jury's verdict for the plaintiff against both corporations, jointly and severally. The court of appeals reversed, holding that the filing of suit against the subsidiary did not stop the running of limitations against the parent corporation, and the court of appeals "regarded it as immaterial that [the parent corporation] was using [the subsidiary] as its alter ego." *Id.* at 575. The supreme court, however, did not regard the alter ego status as immaterial. After finding the parent corporation was the subsidiary's alter ego as a matter of law, the supreme court stated, "the purpose of the court in cases of this nature is to prevent use of the corporate entity as a cloak for fraud or illegality or to work an injustice...." *Id.* The court then held that the parent and subsidiary "are to be regarded as identical for the purpose of determining whether the present suit is barred by limitation. The filing of suit against [the subsidiary] stopped the running of the statute in favor of [the parent corporation]." *Id.*

In *Matthews Construction Co. v. Rosen*, 796 S.W.2d 692 (Tex.1990), the plaintiff sued a corporation for breach of contract and obtained a judgment against it. After difficulty collecting on the judgment, the plaintiff sued the corporation's sole share-

---

2. Appellant does not challenge the trial court's conclusion that appellant is the alter ego of Consolidated and that appellant and Consolidated "are one in the same entity, which means they are one company doing business under both names."

holder alleging the corporation was his alter ego. *Id.* The trial court rendered judgment for the plaintiff for the amount of the underlying judgment. *Id.* at 693. The court of appeals reversed, holding limitations barred the suit against the shareholder. The supreme court, interpreting *Gentry,* held that when the plaintiff filed suit against the corporation, limitations was tolled as to the corporation's alter ego—the shareholder—until final judgment. *Id.* at 694. The supreme court concluded that after applying this tolling, the suit against the shareholder was within the four-year limitations period and upheld the trial court's judgment. *Id.* at 694.

■■■ Although the language of *Gentry* appears to limit that case to the issue of limitations and does not expressly hold it applies to issues of service of citation, subsequent cases have interpreted *Gentry* to hold that service on a subsidiary constitutes service on an alter ego parent corporation. In *Harwood Tire–Arlington, Inc. v. Young,* 963 S.W.2d 881 (Tex.App.-Fort Worth 1998, pet. dism'd by agr.), the plaintiff sued a subsidiary within limitations and the parent corporation outside limitations.[3] *Id.* at 888. The court of appeals citing *Gentry,* stated, "It is undisputed that [the subsidiary] was timely sued and served with citation of process. Because [the parent corporation] was [the subsidiary's] alter ego, it was also timely sued and served with citation of process." *Id.* The supreme court has observed that

"*Gentry* dealt with whether a subsidiary corporation should be regarded as its parent's alter ego for purposes of service of process." *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 799 (Tex.2002).

Thus, as *Gentry* and its progeny show, alter ego is relevant to the issue of service of process, which is the only issue in appellant's bill of review. We overrule appellant's second, sixth, and seventh issues.

In its third issue, appellant asserts the trial court erred in finding appellant was the alter ego of Consolidated because appellees did not plead alter ego. In a supplement to its answer, appellees alleged, "Defendant [sic] contends that Plaintiff was served because Consolidated and Cebcor [Service Corporation] are alter egos of one another, or each other and are the responsible party for one another, or each other." We conclude appellees did plead alter ego.

■■■ Appellant also argues appellees were required to plead the alter ego relationship between Consolidated and appellant in the underlying case. Appellant cites no authority in support of this argument. Accordingly, the argument is not properly briefed and is waived. Tex. R.App. P. 38.1(h); *Martin v. Estates of Russell Creek Homeowners Ass'n, Inc.,* 251 S.W.3d 899, 904 (Tex.App.-Dallas 2008, no pet.). Furthermore, as the supreme court's opinion in *Matthews Construction Co.* demonstrates, a party may obtain a

---

3. The plaintiff sued the parent within the limitations period, but he then nonsuited the parent. *Harwood Tire–Arlington, Inc.,* 963 S.W.2d at 881. Just before limitations expired, the plaintiff again sued the parent corporation, but citation did not issue until more than seven months later. *Id.* A timely filed suit, subsequently nonsuited, does not toll limitations, and the nonsuit is treated as though the first lawsuit had never been filed against the defendant. *Bailey v. Gardner,* 154 S.W.3d 917, 920 (Tex.App.-Dallas 2005, no pet.). Also, a timely filed suit does not interrupt the running of limitations unless the plaintiff exercises due diligence in the issuance and service of citation. *Proulx v. Wells,* 235 S.W.3d 213, 215 (Tex.2007). It appears the plaintiff did not assert he acted with due diligence in obtaining issuance of citation. *See Harwood Tire–Arlington, Inc.,* 963 S.W.2d at 888. Thus, the case stood as if the parent corporation was sued outside the period of limitations.

judgment against one entity and then later pursue a finding that another entity is the alter ego of the judgment debtor. *See Matthews Construction Co.*, 796 S.W.2d at 693–94.

■■■■■ In its reply brief, appellant argues that even if the doctrine of alter ego applies to service of process, it must prevail on its bill of review because the evidence conclusively established that Consolidated was not served with the original petition. This argument fails for at least two reasons. First, a party may not present arguments for the first time in its reply brief. *Dallas County v. Gonzales*, 183 S.W.3d 94, 104 (Tex.App.-Dallas 2006, pet. denied). Second, at trial, appellant's counsel expressly waived any challenge to the validity of the service on Consolidated when he told the court, "We have never and are not today contending that Consolidated Employment Benefits Corporation ... was not served in compliance with the information on file with the Secretary of State.... We are not challenging the service of the original petition." We overrule appellant's third issue.

## JURY ARGUMENT

■■■■ In his fourth and fifth issues, appellant asserts error occurred during appellees' jury argument. In its brief, appellant set out the excerpts from the record allegedly containing error and then simply stated the assertions were prejudicial to appellant and constituted reversible error. Appellant presents no argument or authority in support of these issues. Accordingly, they are waived for inadequate briefing. *See* Tex.R.App. P. 38.1(h); *Town of Flower Mound v. Teague*, 111 S.W.3d 742, 766 (Tex.App.-Fort Worth 2003, pet. denied). We overrule appellant's fourth and fifth issues.

## CONCLUSION

We affirm the trial court's judgment.