

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-10-00297-CV

TOBY BOWEN                                                                APPELLANT

V.

SHELLEY BOWEN                                                              APPELLEE

----------

## FROM THE 325TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

In six issues, including numerous subissues, Appellant Toby Bowen appeals the final decree of divorce that dissolved his marriage to Appellee Shelley Bowen. We will affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Toby and Shelley married in December 1995. They have three children; the first child was born in 1997, the second child was born in 2001, and the youngest child was born in 2004. Toby and Shelley own a house in Hurst, Texas. Shelley has a high school degree, and Toby has a college degree.

In April 2008, Toby moved to McAllen, Texas, to work as vice president for a company. According to Shelley, she and the children never planned to move to McAllen with Toby. Instead, Toby was supposed to visit the family in Hurst on weekends and hopefully transfer to his company's Dallas branch after a year of employment or look for a job in Dallas.[2] Toby's gross pay for 2009 was approximately $123,900, and he acknowledged that he had earned bonuses in 2009 totaling at least $20,000.[3]

Shelley became unemployed in September 2005 when her employer relocated to Austin, but she began working again in February 2009, several months after she initiated divorce proceedings against Toby. Shelley earned approximately $46,000 in 2009, and she now earns about $3,000 per month, excluding Toby's child support payments.

---

[2]Contrary to Shelley's testimony, Toby recalled that the entire family had planned to move to McAllen.

[3]Shelley testified that Toby earned bonuses in 2009 totaling approximately $26,000.

Shelley first perceived a problem with the marriage in August or September 2008 because Toby quit coming home to visit on weekends. Although Toby claimed that he was unable to visit because of "[i]nventory, hunting," he testified that he began having an affair with Tamatha M. sometime in August or September 2008, and he identified Tamatha at trial as his "girlfriend."

Shelley filed her original petition for divorce on September 26, 2008, but Toby did not learn about the divorce action until he was served with an amended petition in early November 2008.[4] The trial court entered temporary orders.

Toby filed a motion for continuance on January 28, 2010, just eleven days before the final trial was scheduled to commence on February 8, 2010, but the trial court denied the motion. On February 1, 2010, Toby filed—without leave—a first amended original counterpetition for divorce in which he sought for the first time primary possession of the children. The trial court struck the filing and denied Toby's request for a trial amendment at the outset of trial.

The trial court signed a final decree of divorce after a final bench trial and entered findings of fact and conclusions of law. In regard to granting the divorce, the trial court found that Toby had "committed adultery during the period of the marriage" and that he "was guilty of cruel treatment toward [Shelley]."

The decree appointed Shelley and Toby joint managing conservators of the children with Shelley having the exclusive right to designate the children's

---

[4]According to Shelley, she "didn't want to serve him to begin with, but then he had an affair. I had no choice."

residence. The decree ordered "that the primary residence of the children shall not be restricted to a geographical restriction except that the children's residence shall not increase from 525 miles from [Toby's] residence in McAllen, Texas, unless father moves from McAllen, Texas." The trial court found that "[t]he periods of possession [o]rdered[] are in substantial compliance with the Standard Possession Order[] for conservators who live in excess of 100 miles of each other," and the decree ordered that the first weekend of Toby's possession each month occur in the "DFW metroplex area or wherever the children are residing" with Shelley.

The decree ordered Toby to pay child support to Shelley in the amount of $2,250 per month and to maintain health insurance for the children, which the trial court found to be at a cost of $137.67 per month. The trial court found that "[t]he amount of child support ordered by the Court is in accordance with the percentage guidelines of" the family code.[5] The trial court also found that Toby "received the sum of approximately $350,000 as inheritance during the course of the divorce proceedings."

The trial court ordered a disproportionate division of the community estate in favor of Shelley, ordered that the residence be sold and that Toby continue making mortgage payments until the sale, and ordered Toby to pay 75% and Shelley to pay 25% of the credit card debt.

---

[5]The $2,250 child support liability equals 30% of the first $7,500 of Toby's net resources, which totaled $7,759.40.

### III. Motion for Continuance

In his first issue, Toby argues that the trial court abused its discretion by denying the motion for continuance that he filed eleven days before the final trial setting of February 8, 2010. At the hearing on the motion for continuance, Toby argued that the trial should be continued because his counsel learned of the final trial setting for the first time at a mediation held on January 27, 2010, and because discovery was incomplete since the social study ordered by the trial court on May 21, 2009, had not been performed or completed. Toby raises the same arguments on appeal.

We review a trial court's ruling on a motion for continuance for an abuse of discretion. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002). A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Id.*

The party seeking a continuance bears the burden of demonstrating sufficient cause. *See* Tex. R. Civ. P. 251. If a continuance is sought in order to pursue further discovery, as Toby contends is the case here, the motion must describe the evidence sought, explain its materiality, and show that the party requesting the continuance has used due diligence to obtain the evidence. *Wal-Mart Stores Tex., LP v. Crosby*, 295 S.W.3d 346, 356 (Tex. App.—Dallas 2009, pet. denied); *see* Tex. R. Civ. P. 252; *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004). A trial court does not abuse its discretion by

5

denying a motion for continuance that does not meet the requirements of rule 252. *Wal-Mart Stores*, 295 S.W.3d at 356.

Shelley filed suit in September 2008 and served Toby with an amended petition in November 2008. The trial court entered a scheduling order in April 2009 that set the final trial for February 8, 2010. The order contains the signatures of Shelley's attorney and, according to Shelley, the signature of Toby's previous attorney.[6] The signature of the attorney who represented Toby at trial and filed the motion for continuance appears on the associate judge's recommendation for contempt, which was signed in September 2009—five months before the final trial setting. The trial court's implied conclusion that Toby's counsel's apparent failure to familiarize herself with the case file after months of representing Toby did not constitute sufficient cause to warrant a continuance is not arbitrary or unreasonable. *See BMC Software Belg., N.V.*, 83 S.W.3d at 800.

Regarding Toby's argument that more time for discovery was needed because the social study had not been completed, we first note that Toby claimed in the written motion only that neither he nor his attorney were available for the final trial because they each had other engagements. The motion did not elaborate that Toby needed additional time to pursue further discovery, including completing the social study, nor did the motion describe the evidence sought,

---

[6]Toby does not contest Shelley's factual statement that Toby's previous attorney signed the scheduling order. *See* Tex. R. App. P. 38.1(g).

6

explain its materiality, and show that Toby had used due diligence to obtain the additional evidence.  *See Wal-Mart Stores*, 295 S.W.3d at 356.

Moreover, and notwithstanding the written motion's fatal shortcoming, the trial court ordered on May 21, 2009, that a social study be completed, but there is nothing in the record to show that Toby exercised any diligence in seeking to somehow enforce the order until eight months later and only eleven days before the final trial setting.  Toby argues that the social study's "materiality to the case is extremely critical on the issue of conservatorship," but the record shows that Toby did not seek primary possession of the children until he filed—without leave—a first amended original counterpetition for divorce just seven days before the final trial.[7]  Notwithstanding that Toby's decision to seek primary possession of the children on the eve of trial undercuts his materiality argument, the trial court struck Toby's first amended counterpetition.[8]

We hold that the trial court did not abuse its discretion by denying Toby's motion for continuance.  Accordingly, we overrule his first issue.

---

[7]The pre-trial docket control scheduling order non-jury docket required that amended pleadings be filed by July 24, 2009.

[8]Toby argues for the first time in his reply brief that the trial court abused its discretion by striking his first amended counterpetition.  This argument is waived. *See Cebcor Serv. Corp. v. Landscape Design & Constr., Inc.*, 270 S.W.3d 328, 334 (Tex. App.—Dallas 2008, no pet.) ("[A] party may not present arguments for the first time in its reply brief.").

**IV. LIFE INSURANCE, COSTS OF TRAVEL, REIMBURSEMENT OF EXTRACURRICULAR ACTIVITIES, AND MORTGAGE PAYMENTS**

In his second issue, Toby asserts four arguments relating to his child support obligation. We review a trial court's decision on child support for an abuse of discretion. *See Rodriguez v. Rodriguez*, 860 S.W.2d 414, 415 (Tex. 1993).

**A.     Life Insurance**

The decree orders "that, as additional child support, [Toby] shall, at his sole cost and expense until all children have reached the age of 18 and graduated from high school, maintain a term life insurance policy in the sum of $100,000.00, naming [Shelley] as trustee for the benefit of the children." In the first subissue of his second issue, Toby argues that the trial court abused its discretion by ordering him to maintain a life insurance policy "as additional child support" because the family code does not specifically authorize the premiums paid by a child support obligor's maintenance of a life insurance policy to be included "as a child support obligation." Alternatively, in the event that monthly life insurance premiums may be included in a calculation of net resources for determining child support, Toby compares the costs of maintaining life insurance to the costs of maintaining medical support and argues that the trial court erred by not deducting the costs of monthly life insurance premiums from his resources in determining the amount of his net resources for purposes of calculating his

monthly child support obligation. *See* Tex. Fam. Code Ann. § 154.062(d)(5) (West Supp. 2010).

Family code section 154.016, entitled "Provision of Support in Event of Death of Parent," provides that the "court may order a child support obligor to obtain and maintain a life insurance policy, including a decreasing term life insurance policy, that will establish an insurance-funded trust or an annuity payable to the obligee for the benefit of the child that will satisfy the *support obligation* under the child support order *in the event of the obligor's death*." *Id.* § 154.016(a) (West 2008) (emphasis added). In determining the "nature and extent of the obligation to provide for the support of the child *in the event of the death of the obligor*," the court must consider "all relevant factors," including "the present value of the total amount of monthly periodic child support payments." *Id.* § 154.016(b)(1) (emphasis added).

The provision in the decree requiring Toby to maintain a term life insurance policy for the benefit of his three children is authorized by and derived from section 154.016. That statute makes clear that the purpose of maintaining a term life insurance policy is to ensure that a child support obligation is met *after* the obligor's death. It is only in this context—after the obligor dies—that section 154.016 addresses support. There is nothing in section 154.016 or in section 154.062 that permits or requires life insurance premiums to be included in determining net resources for purposes of figuring child support liability. *See id.* § 154.062(b), (c), (d). Considering the decree as a whole, the trial court's

9

findings of fact and conclusions of law, and section 154.016, it is apparent that the decree's requirement that Toby maintain a term life insurance policy "as additional child support" is nothing more than an attempt to implement a provision in the decree that is consistent with section 154.016(a). *See Holmes v. Holmes*, No. 03-08-00791-CV, 2010 WL 3927593, at \*7 (Tex. App.—Austin Oct. 5, 2010, no pet.) (mem. op.) (reasoning that trial court has discretion to order child support obligor to purchase life insurance policy as additional child support). Toby argues that the trial court "should have provided for a decreasing term life insurance policy," but section 154.016(a) unambiguously does not so require. *See id.* § 154.016(a) (stating that an obligor may be ordered to maintain a life insurance policy, "*including* a decreasing term life insurance policy") (emphasis added). We overrule the first subissue of Toby's second issue.

## B.    Costs of Travel

In the second subissue of his second issue, Toby argues that the trial court should have provided for "a downward variation from the strict application of the [child support] guidelines" because of the costs that he will incur travelling between McAllen and Tarrant County to exercise possession of the children. He contends that because the trial court determined that he had net resources of $7,759.40 per month, assessed $137.67 for the monthly cost of health insurance, and applied the child support guidelines (30%) to the first $7,500 of his net resources, he is left with only $121.73 to use for travel expenses to exercise possession. We do not understand Toby's argument. Accounting for child

10

support in the amount of $2,250 and for health insurance in the amount of $137.67, Toby has over $5,000 in net resources remaining per month. Considering this and the remainder of the record, we cannot conclude that the trial court abused its discretion in its order of child support. We overrule the second subissue of Toby's second issue.

### C. Reimbursement of Extracurricular Activities

The decree orders Toby to reimburse Shelley for "50% of all of the children's extracurricular organized activities[,] including but not limited to extracurricular sports activities." In the third subissue of his second issue, Toby argues that there is no statutory authority for this ruling, that Shelley presented no evidence regarding the children's extracurricular activities or that any such activities are necessary, and that "this ground for recovery does not support the judgment" because "there is no finding of fact to support the reimbursement for the children's extracurricular activities."

Family code section 154.126(a) provides as follows:

> (a) If the obligor's net resources exceed the amount provided by Section 154.125(a), the court shall presumptively apply the percentage guidelines to the portion of the obligor's net resources that does not exceed that amount. Without further reference to the percentage recommended by these guidelines, the court may order additional amounts of child support as appropriate, depending on the income of the parties and the proven needs of the child.

Tex. Fam. Code Ann. § 154.126(a) (West 2008). The trial court found that Toby had net resources of $7,759.40, and it presumptively applied the percentage guidelines to the first $7,500 of Toby's net resources. Section 154.126(a)

11

authorized the additional extracurricular activities reimbursement requirement, depending on the income of the parties and the proven needs of the children.

The needs of a child are not limited to the "bare necessities of life." *Rodriguez*, 860 S.W.2d at 417 n.3. Rather, it is an ambiguous term that has never been defined by the family code and has been left for the courts to determine in their discretion on a case-by-case basis. *In re J.A.H.*, 311 S.W.3d 536, 542 (Tex. App.—El Paso 2009, no pet.). In determining needs of the child, however, courts must follow the paramount guiding principle: the best interest of the child. *Thomas v. Thomas*, 895 S.W.2d 895, 897 (Tex. App.—Waco 1995, writ denied).

Although the record contains sparse evidence regarding the children's extracurricular activities, there is evidence that Toby took a trip to Cooperstown, New York, so that the oldest son could participate in a baseball tournament. Shelley testified that they had been planning to take the trip for "a couple of years"; therefore, the trial court could have concluded that the child regularly played organized baseball. As to the income of the parties, the trial court found that Toby's net resources were more than double the amount of Shelley's net resources and that Toby had received approximately $350,000 as an inheritance during the course of the divorce proceedings.[9] The trial court was not required to

---

[9]Toby argues for the first time in his reply brief that the trial court abused its discretion by considering his inheritance in its division of the community estate. This argument is waived. *See Cebcor Serv. Corp.*, 270 S.W.3d at 334.

make findings relevant to this issue. *See Yarbrough v. Yarbrough*, 151 S.W.3d 687, 692 (Tex. App.—Waco 2004, no pet.) ("Because the percentage guidelines do not apply to net monthly resources exceeding [$7,500], section 154.130 does not apply to child support awarded from those resources."). We cannot conclude that the trial court abused its discretion by determining that it was in the children's best interest that Toby reimburse Shelley for 50% of the children's extracurricular activities. Accordingly, we overrule the third subissue of Toby's second issue.

## D. Mortgage Payments

In the fourth subissue of his second issue, Toby argues that the trial court abused its discretion by requiring him to pay 100% of the monthly mortgage payment until the house is sold in light of the amount of his and Shelley's monthly net resources.[10] He argues that Shelley's monthly net resources are not approximately $2,700, as the trial court found, but that they actually amount to

---

[10]The trial court found as follows:

25.    The community estate . . . was comprised primarily of personal property of a de minimis value, two vehicles the parties had in their respective possession prior to the initiation of the divorce action, and the marital residence estimated to have a negative equity of approximately $20,000.00 by [Toby]. The life insurance policies insuring the lives of each child were placed under the control of [Toby], as were the college funds of approximately $25,000.00.

The Court finds that the residence owned by the parties most likely has no equity. [Toby] requested the residence be sold. The Court has ordered the house be sold, and, in the event there is equity in the house, such equity should be split 75% to [Shelley] and 25% to [Toby]. The Court finds that to help maintain the value of the house, [Toby] should be ordered to pay the mortgage while the sale is pending.

13

over $7,000 when considering that Toby pays the $1,800 monthly mortgage payment and monthly child support in the amount of $2,250. Toby also argues that a "more realistic evaluation" of his monthly net resources is that they total approximately $3,500 after deducting the mortgage payment and his child support obligation from the trial court's finding of $7,759.40.

Toby's net resources calculations disregard family code section 154.062, which lists resources, items not included in resources, and deductions from resources for purposes of calculating net resources in determining child support liability. *See* Tex. Fam. Code Ann. § 154.062(b), (c), (d). No part of section 154.062 identifies a mortgage payment or a child support obligation as a non-resource or as an item that may be deducted from resources. *See id.* at § 154.062(c), (d). The lone case that Toby cites is inapposite because it addresses whether the trial court abused its discretion by considering a child support obligor's payment of a note as a relevant factor in justifying an award of support outside of the range recommended by the guidelines. *See Sanchez v. Sanchez*, 915 S.W.2d 99, 102–03 (Tex. App.—San Antonio 1996, no writ). In this case, the trial court found that the amount of child support awarded is in accordance with the percentage guidelines of the family code.

Further, Shelley testified that her monthly net resources are approximately $3,000, and one of her exhibits lists her monthly net pay at $2,654. The trial court found that Toby had received over $21,000 in bonuses, had removed $20,000 from a bank account, had a "well-paid, executive level position at the

14

time of trial," and had inherited approximately $350,000 during the divorce proceedings. Although the decree requires Toby to continue making the mortgage payments until the residence is sold, it also orders that Shelley is responsible for 100% of the utilities incurred on the property and for maintenance of the property costing up to $100 per incident. Considering this evidence and the remainder of the record, we cannot conclude that the trial court abused its discretion by requiring Toby to pay 100% of the monthly mortgage payment. We overrule the fourth subissue of Toby's second issue.[11]

## V. FIRST WEEKEND PERIOD OF POSSESSION

In his third issue, Toby argues that the trial court abused its discretion by ambiguously ordering that "the 1st weekend period of [Toby's] possession each month shall occur in the DFW metroplex area or wherever the children are residing with [Shelley]."[12] He contends that there is no evidence or finding that supports the order and that it is unclear (a) whether the order requires him to exercise his possession during only the first calendar weekend of each month

---

[11]To the extent that Toby asserts any arguments in his second issue that are not addressed herein, those arguments are waived as inadequately briefed. *See* Tex. R. App. P. 38.1(i) (requiring brief to contain a clear and concise argument for the contentions made with appropriate citations to authorities); *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex. 1994) (discussing "long-standing rule" that issue may be waived due to inadequate briefing).

[12]In addition to this provision, the decree awards Toby possession on the first, third, and fifth weekends of the month and gives him the option of exercising possession not more than one weekend per month on the weekend of his choice, upon ninety days' written notice to Shelley.

15

when he also has the option of electing to exercise possession during one weekend per month of his choice, (b) whether the first weekend of his possession may occur on the third or fifth weekend if he is unable to exercise possession on the first or third weekends, and (c) whether exercising possession during the first weekend of the month in the DFW metroplex "is a condition precedent each month for the 3rd and 5th weekends to occur in McAllen."

In *Shanks v. Treadway*, the supreme court explained,

> When interpreting a divorce decree, courts apply the general rules regarding construction of judgments. Judgments should be construed as a whole to harmonize and give effect to the entire decree. "[I]f the decree, when read as a whole, is unambiguous as to the property's disposition, the court must effectuate the order in light of the literal language used." If the decree is ambiguous, the court should review the record along with the decree to aid in interpreting the judgment. In addition, if a judgment is ambiguous— that is, subject to more than one reasonable interpretation—courts should adopt the construction that correctly applies the law. As with other written instruments, whether a divorce decree is ambiguous is a question of law.

110 S.W.3d 444, 447 (Tex. 2003) (internal citations omitted).

Applying these rules of construction, the decree unambiguously provides that Toby is required to exercise the first weekend of *his possession* in the DFW metroplex or wherever the children are residing with Shelley. The decree does not require Toby to exercise possession during only the first weekend of the month, does not prohibit Toby from electing to exercise possession during one selected weekend per month, does not prohibit Toby from exercising his first weekend of possession on the third or fifth weekends, and does not make

16

exercising possession on the first weekend of the month in the DFW metroplex a condition precedent to exercising possession during the third and fifth weekends in McAllen. None of Toby's proposed interpretations of the decree are reasonable.

The trial court found that "[t]he periods of possession [o]rdered[] are in substantial compliance with the Standard Possession Order[] for conservators who live in excess of 100 miles of each other," but it deviated from the standard possession order by requiring the first weekend of Toby's possession to occur in the DFW metroplex or wherever the children are residing with Shelley. When deviating from the standard possession order, the trial court looks to the standard possession order guidelines and may also consider the age, developmental status, circumstances, needs, and best interest of the child; the circumstances of the joint managing conservators; and any other relevant factor. Tex. Fam. Code. Ann. § 153.256 (West 2008). A trial court has broad discretion in determining the best interest of a child in family law matters such as custody, visitation, and possession, and we review a decision to modify possession for a clear abuse of discretion. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982).

The trial court found that Toby resides 525 miles from the residence of the children and that "[t]he distance between the residences of the parents requires accommodations so that the parents and the children are not required to travel excessively." Shelley testified as follows about the excessive travel time between Hurst and McAllen:

17

Q. How long is the travel time for each jog [between Hurst and McAllen]?

A. Thinking eight hours.

Q. Is it eight hours one way or eight hours both ways.

A. One way.

Q. That's a long drive, don't you think?

A. Uh-huh.

In light of this evidence, and considering the possession order and the age, developmental status, and circumstances of the children, the trial court could have reasonably concluded that it would not be in the best interests of the children to travel for at least sixteen hours by car every other weekend. *See* Tex. Fam. Code Ann. § 153.002 (West 2008) ("The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child."). We hold that the trial court did not abuse its discretion by ordering Toby to exercise the first weekend of his possession in the DFW metroplex or wherever the children are residing with Shelley. We overrule Toby's third issue.

## VI. DIVISION OF COMMUNITY ESTATE

In his fourth issue, Toby asserts three arguments relevant to the trial court's division of the community estate.

## A.     Mortgage Payments Pending Sale of House

In the first subissue of his fourth issue, Toby argues that the trial court "effectively awarded Shelley a portion of Toby's separate property by ordering him to maintain the mortgage payments on the marital homestead pending sale while providing her with the exclusive right to occupy said residence and without any provision for reimbursement." Toby contends that requiring him to pay the mortgage after the divorce has been granted requires him to pay money from his earnings that are clearly separate property.

A trial court has broad discretion in making a "just and right" division of the marital estate. *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981). It is well established that the trial court has the authority to order the payment or disposition of the community debts in its consideration and determination of the division of the community estate. *Taylor v. Taylor*, 680 S.W.2d 645, 648 (Tex. App.—Beaumont 1984, writ ref'd n.r.e.).

Here, the trial court merely assigned a portion of the community debt to Toby when it ordered him to make the mortgage payments pending the sale of the residence. *See generally Siefkas v. Siefkas*, 902 S.W.2d 72, 76–77 (Tex. App.—El Paso 1995, no writ) ("[W]e find that the assignment of the second mortgage to Appellant merely assigns to him a portion of the community's debt . . . ."). Toby may be required to expend post-divorce separate assets to comply with the order, but this unavoidable consequence does not defeat the trial court's

duty to account for the community debt as part of its division of the community estate. As explained by now-Chief Justice Stone in *Johnson v. Johnson*,

> Richard argues that the trial court erred in awarding to him the community property debt on the couple's van because . . . the satisfaction of the debt would come from his separate property. . . .
>
> . . . .
>
> . . . [W]e reject Richard's contention that the court's order constitutes an impermissible division of his separate property. As is often the case in divorce proceedings, Richard and Colleen apparently had more community debt to divide than community assets. Under such circumstances, payment of community debts after entry of a divorce decree will always require use of separate funds since the community estate no longer exists. Nonetheless, the community debts must be paid, and if the parties cannot agree on who is to pay the debts, it is the duty of the trial court to enter an appropriate order.

948 S.W.2d 835, 837–38 (Tex. App.—San Antonio 1997, writ denied).

Toby also argues that requiring him to make 100% of the mortgage payments "provides no incentive for Shelley to sell the residence." The decree unambiguously provides that he and Shelley have no choice but to list the property by a certain date and to sell the property at a mutually agreeable price by a certain date.

We hold that the trial court did not abuse its discretion by ordering Toby to make mortgage payments pending the residence's sale. We overrule the first subissue of Toby's fourth issue.

20

## B.    Disproportionate Division of Community Estate

In the second subissue of his fourth issue, Toby argues that the trial court abused its discretion by rendering a disproportionate division of the community estate in favor of Shelley.[13]

A trial judge is charged with dividing the community estate in a "just and right" manner, considering the rights of both parties.   Tex. Fam. Code Ann. § 7.001 (West 2006); *Watson v. Watson*, 286 S.W.3d 519, 522 (Tex. App.—Fort Worth 2009, no pet.).   The court has broad discretion in making a just and right division, and absent a clear abuse of discretion, we will not disturb that division.[14] *Jacobs v. Jacobs*, 687 S.W.2d 731, 733 (Tex. 1985); *Boyd v. Boyd*, 131 S.W.3d 605, 610 (Tex. App.—Fort Worth 2004, no pet.).

---

[13]The trial court found that "[t]he community assets of the parties should be divided in a disproportionate manner."

[14]In family law cases, the traditional sufficiency standards of review overlap with the abuse of discretion standard of review; therefore, legal and factual insufficiency are not independent grounds of error but are relevant factors in our assessment of whether the trial court abused its discretion.  *Watson*, 286 S.W.3d at 522.  To determine whether there has been an abuse of discretion because the evidence is legally or factually insufficient to support the trial court's decision, we must determine whether the trial court had sufficient evidence upon which to exercise its discretion and whether the trial court erred in its application of that discretion.  *Id.* at 522–23.  The legal and factual sufficiency standards of review are well established.  *See Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005); *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999); *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

Community property does not have to be divided equally, but the division must be equitable. *Kimsey v. Kimsey*, 965 S.W.2d 690, 704 (Tex. App.—El Paso 1998, pet. denied). The trial court may consider the following non-exclusive factors, among others, in determining whether the division of the community estate is equitable: (1) the spouse's capacities and abilities; (2) education; (3) the relative financial conditions and obligations of the parties; (4) size of the separate estates; (5) the nature of the property; (6) disparities in earning capacities and income; (7) fault of the breakup of the marriage; and (8) any wasting of the community assets by one of the spouses. *Murff*, 615 S.W.2d at 699. In determining whether to disproportionately divide the community estate, the trial court may consider a spouse's dissipation of the community estate and any misuse of community property. *Vannerson v. Vannerson*, 857 S.W.2d 659, 669 (Tex. App.—Houston [1st Dist.] 1993, writ denied). When one spouse not only deprives the other of community assets but does so with dishonesty and intent to deceive, the trial court may consider such heightened culpability in its division. *Schlueter v. Schlueter*, 975 S.W.2d 584, 589–90 (Tex. 1998). A disproportionate division must be supported by some reasonable basis. *Smith v. Smith*, 143 S.W.3d 206, 214 (Tex. App.—Waco 2004, no pet.).

The trial court made the following findings:

30. [Toby] had a well-paid, executive level position at the time of trial.

26. [Toby] received over $21,000 in bonuses, as set forth on Petitioner's Exhibit 36 . . . . [Toby] deposited only $6,000 of such

22

bonuses into the trust account of [Shelley's] attorney prior to the trial date.

24.    [Toby] received the sum of approximately $350,000 as inheritance during the course of the divorce proceedings.

31.    [Shelley] had not been employed outside the home for 3 years prior to separation, had a high school education, and was the primary care-taker of the subject children.

The evidence supports these findings.  Toby's gross pay for 2009 was approximately $123,900, and he acknowledged that he had earned bonuses in 2009 totaling at least $20,000.  Shelley earned approximately $46,000 in 2009, and she now earns about $3,000 per month.  Shelley became unemployed in September 2005 when her employer relocated to Austin, but she began working again in February 2009, several months after she initiated divorce proceedings against Toby.  Rhonda, Toby's sister, testified that she and Toby had each inherited between $320,000 and $350,000, and the executor of Toby's father's estate testified that there is no limitation on the inheritance money.

The trial court made the following findings:

4.    [Toby] committed adultery during the period of the marriage.

28.    [Toby] wrote a check from a community account to his paramour.

32.    [Toby] expended community assets for the use and benefit of a paramour for travel with him on three separate occasions.

The evidence supports these findings.  Toby testified that he began having an affair with Tamatha M. sometime in August or September 2008, and he identified

23

Tamatha at trial as his "girlfriend." Toby confirmed that he had taken three trips with Tamatha: a $5,000 trip to Jamaica; a $3,000 to $5,000 trip to Cooperstown, New York; and a trip to the Dominican Republic. Toby acknowledged that he had given Tamatha $620.

The trial court made the following findings:

5. [Toby] was guilty of cruel treatment toward [Shelley].

35. [Toby] assaulted [Shelley] in the presence of the children and other members of his family.

29. [Toby] failed to exercise his summer period of possession causing [Shelley] to incur additional expenses of over $2,500.00.

The evidence supports these findings. Shelley and Rhonda testified about an incident in July 2009 in which Toby pushed Shelley out of a door while at Toby's father's residence; the children were crying. Toby admitted that he had been charged with assaulting Shelley over that incident. Shelley testified that Toby had the electricity turned off at the residence during Christmas 2008, forcing Shelley and the children to stay with Shelley's aunt and uncle. Toby admitted at trial that he had Shelley's Capital One credit card shut off after Shelley confronted him and Tamatha at an airport in late October 2008. He also admitted that he had the cable, internet access, and telephone shut off at the residence at one point. During the course of the litigation, the trial court held Toby in contempt for violating an order requiring him to overnight mail one of the children's prescriptions for Singulair that Toby had refused to return to Shelley; to

24

reimburse Shelley for expenses related to electrical, phone, and cable services at the residence that he had caused Shelley to incur; to forward all of his bonus checks to Shelley's attorney for deposit in the attorney's trust account; and to pay to Shelley's attorney fees in the amount of $4,306.50. Toby did not exercise his summer 2009 visitation with the children, causing Shelley to incur costs associated with the children's day care, and he had possession of the children during Christmas 2009 for only one and a half days.

The trial court also made the following findings:

27. [Toby] removed $20,000 from a bank account without providing an accounting of said funds.

33. [Toby] failed to provide an accounting of Insurance Company income.

The evidence supports these findings. Shelley testified that in September or October 2008, Toby removed $20,000 from a community bank account. She also testified that Toby had lied about not receiving any income from his insurance business in 2009. Shelley testified that Toby never gave her an accounting of the $20,000 or of the bonuses that he received from his current job for 2009.

Toby challenges the trial court's decision ordering him to pay 75% of the community's credit card debt. He argues that this order essentially requires him to pay for part of an abstract of judgment for approximately $13,000 that was entered against Shelley in December 2005. Toby contends that he knew nothing about the judgment, that he had nothing to do with incurring the debt upon which

the abstract of judgment is based and, therefore, that the trial court abused its discretion in dividing the community debt. Shelley testified that the abstract of judgment came about as a result of unpaid credit card debt. She testified that her credit card payments were overdue, that she could not pay them, and that she disclosed the credit card debt to Toby but that he refused to pay the debt, choosing instead to pay down his own debts at the time. When the abstract of judgment was entered, Toby and Shelley had been married for approximately ten years, and Toby's insistence at trial that he knew nothing about the abstract of judgment was insufficient to overcome the community property presumption—to the extent that Toby makes any such argument. *See* Tex. Fam. Code Ann. § 3.003(a), (b) (West 2006) (requiring clear and convincing evidence to establish separate property character).

A reasonable basis supports the trial court's disproportionate division of the community estate in Shelley's favor. Accordingly, we hold that the trial court did not abuse its discretion in its division of the community estate, and we overrule the second subissue of Toby's fourth issue.

### C. Petitioner's Exhibit 36

In the third subissue of his fourth issue, Toby argues that the trial court abused its discretion by admitting Petitioner's Exhibit 36, a summary of the bonuses paid to Toby in 2009 and deposited into Shelley's attorney's trust account. Toby argues that the trial court abused its discretion because Shelley

26

failed to establish the proper predicate for admitting the summary under rule of evidence 1006.

To preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a); *see also* Tex. R. Evid. 103(a)(1). If a party fails to do this, error is not preserved, and the complaint is waived. *Bushell v. Dean*, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh'g).

Toby objected to Petitioner's Exhibit 36 on the lone ground that it was "not an *accurate* summary, and I would ask that [Shelley's attorney] submit *all* of the pay stubs which will reflect all of the bonuses that were paid to Mr. Bowen." [Emphasis added.] Toby thus objected that the summary was inaccurate because it was incomplete, not that Shelley had failed to lay the proper predicate for admitting the exhibit, as he argues now on appeal. Toby's argument on appeal does not comport with the objection that he asserted at trial. Consequently, Toby failed to preserve this issue for appellate review. *See* Tex. R. App. P. 33.1(a). We overrule the third subissue of Toby's fourth issue.

### VII. ATTORNEY'S FEES

In his fifth issue, Toby argues that the trial court abused its discretion by awarding Shelley $23,000 in attorney's fees in light of the factors that are considered in dividing the community estate and the trial court's failure to

27

consider "the fraud on the community estate resulting in the [Abstract of Judgment]" and "the waste of community assets by Shelley."

The trial court has great discretion in deciding whether to award attorney's fees to either party and in determining the amount of attorney's fees to be so awarded. *Mandell v. Mandell*, 310 S.W.3d 531, 541 (Tex. App.—Fort Worth 2010, pet. denied); *Grossnickle v. Grossnickle*, 935 S.W.2d 830, 846 (Tex. App.—Texarkana 1996, writ denied). It has the authority to award attorney's fees against a spouse in a divorce action as part of the equitable power to make a fair division of the community estate. *Carle v. Carle*, 149 Tex. 469, 474, 234 S.W.2d 1002, 1005 (1950). Because the award of attorney's fees in a divorce case can be part of the property division, the trial court can award them to either party, regardless of who is successful in the trial court or on appeal. *Grossnickle*, 935 S.W.2d at 846. An attorney's testimony alone can be sufficient evidence to support the award. *Peeples v. Peeples*, 562 S.W.2d 503, 506 (Tex. Civ. App.—San Antonio 1978, no writ).

The trial court awarded attorney's fees as part of its division of the estate. It found that the following factors were considered in arriving at a just and right division of the community estate:

j)      The attorney's fees paid [by Toby] to different attorneys during the course of the case totaling approximately $75,000.00 by his own testimony; and

k)      The reasonable and necessary attorney's fees, costs and expenses incurred by [Shelley] in this case and an award of

28

$23,000.00 in attorney's fees to be paid by [Toby] for the benefit of [Shelley].[15]

In addition to all of the evidence discussed above in the analysis of the second subissue of Toby's fourth issue, which sets out evidence supporting the trial court's community property division, the trial court found as follows:

34.    [Toby] filed untimely appeals of the Associate Judge's rulings, thwarting the orderly procedure of the Court and causing [Shelley] additional financial hardship.

36.    [Toby] was found in contempt of Court on September 10, 2009, . . . .

37.    [Toby] contested the paternity of the youngest child during the final trial, although the case had been pending for a year and a half before this allegation, necessitating a delay in the finalization of this case and additional expenditure of community assets.

Shelley's attorney testified that she had incurred in excess of $36,000 in attorney's fees but that she had only been paid $17,000. According to her, "[she] would estimate that the majority of the $36,000 that [has] been incurred in this case by my client [has] been as a direct result of [Toby's] refusal to follow any of the orders of this Court."

We hold that the evidence supports the award of attorney's fees and that the trial court did not abuse its discretion by awarding attorney's fees to Shelley in the amount of $23,000. We overrule Toby's fifth issue.

---

[15]The trial court found that the community assets should be divided in a disproportionate manner based, in part, on the "attorney's fees paid from community funds and attorney's fees due."

29

## VIII. ATTORNEY'S FEES STATEMENT

In his sixth issue, Toby argues that the trial court abused its discretion by awarding attorney's fees "which were necessary as support of [Shelley] and the children the subject of this suit" because an award of attorney's fees "cannot be awarded on the basis of support of either the spouse or the children." The trial court's award of attorney's fees has nothing to do with child support. The complained-of sentence, which is contained in the portion of the decree stating that good cause exists to award Shelley attorney's fees, is merely a statement recognizing that Shelley incurred attorney's fees and nothing else. We overrule Toby's sixth issue.

## IX. SHELLEY'S MOTION FOR PAYMENT OF MORTGAGE PAYMENTS

Shelley filed a motion requesting that we abate this appeal to permit the trial court to consider Toby's alleged failure to make monthly mortgage payments. *See* Tex. Fam. Code Ann. § 9.007(a), (c) (West 2006). We deny the motion because it is moot as of the date of this opinion.

## X. CONCLUSION

Having overruled all of Toby's issues, including his numerous subissues, we affirm the trial court's judgment.

BILL MEIER
JUSTICE

PANEL: DAUPHINOT, GARDNER, and MEIER, JJ.

DELIVERED: August 4, 2011