02-10-297-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00297-CV

 

 


 
 
 Toby Bowen
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 Shelley Bowen
 
 
  
 
 
 APPELLEE
 
 


 

 

----------

FROM THE 325th
District Court OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

I.  Introduction

          In
six issues, including numerous subissues, Appellant Toby Bowen appeals the
final decree of divorce that dissolved his marriage to Appellee Shelley Bowen. 
We will affirm.

II.  Factual and
Procedural Background

          Toby
and Shelley married in December 1995.  They have three children; the first
child was born in 1997, the second child was born in 2001, and the youngest
child was born in 2004.  Toby and Shelley own a house in Hurst, Texas.  Shelley
has a high school degree, and Toby has a college degree.

          In
April 2008, Toby moved to McAllen, Texas, to work as vice president for a
company.  According to Shelley, she and the children never planned to move to
McAllen with Toby.  Instead, Toby was supposed to visit the family in Hurst on
weekends and hopefully transfer to his company’s Dallas branch after a year of
employment or look for a job in Dallas.[2]  Toby’s gross pay for
2009 was approximately $123,900, and he acknowledged that he had earned bonuses
in 2009 totaling at least $20,000.[3]

          Shelley
became unemployed in September 2005 when her employer relocated to Austin, but
she began working again in February 2009, several months after she initiated divorce
proceedings against Toby.  Shelley earned approximately $46,000 in 2009, and
she now earns about $3,000 per month, excluding Toby’s child support payments.

          Shelley
first perceived a problem with the marriage in August or September 2008 because
Toby quit coming home to visit on weekends.  Although Toby claimed that he was
unable to visit because of “[i]nventory, hunting,” he testified that he began
having an affair with Tamatha M. sometime in August or September 2008, and he
identified Tamatha at trial as his “girlfriend.”

          Shelley
filed her original petition for divorce on September 26, 2008, but Toby did not
learn about the divorce action until he was served with an amended petition in
early November 2008.[4]  The trial court entered
temporary orders.

          Toby
filed a motion for continuance on January 28, 2010, just eleven days before the
final trial was scheduled to commence on February 8, 2010, but the trial court
denied the motion.  On February 1, 2010, Toby filed—without leave—a first
amended original counterpetition for divorce in which he sought for the first
time primary possession of the children.  The trial court struck the filing and
denied Toby’s request for a trial amendment at the outset of trial.

          The
trial court signed a final decree of divorce after a final bench trial and
entered findings of fact and conclusions of law.  In regard to granting the
divorce, the trial court found that Toby had “committed adultery during the
period of the marriage” and that he “was guilty of cruel treatment toward
[Shelley].”

          The
decree appointed Shelley and Toby joint managing conservators of the children
with Shelley having the exclusive right to designate the children’s residence. 
The decree ordered “that the primary residence of the children shall not be
restricted to a geographical restriction except that the children’s residence
shall not increase from 525 miles from [Toby’s] residence in McAllen, Texas,
unless father moves from McAllen, Texas.”  The trial court found that “[t]he
periods of possession [o]rdered[] are in substantial compliance with the
Standard Possession Order[] for conservators who live in excess of 100 miles of
each other,” and the decree ordered that the first weekend of Toby’s possession
each month occur in the “DFW metroplex area or wherever the children are
residing” with Shelley.

          The
decree ordered Toby to pay child support to Shelley in the amount of $2,250 per
month and to maintain health insurance for the children, which the trial court
found to be at a cost of $137.67 per month.  The trial court found that “[t]he
amount of child support ordered by the Court is in accordance with the percentage
guidelines of” the family code.[5]  The trial court also found
that Toby “received the sum of approximately $350,000 as inheritance during the
course of the divorce proceedings.”

          The
trial court ordered a disproportionate division of the community estate in favor
of Shelley, ordered that the residence be sold and that Toby continue making mortgage
payments until the sale, and ordered Toby to pay 75% and Shelley to pay 25% of
the credit card debt.

III.  Motion for Continuance

          In his first issue, Toby
argues that the trial court abused its discretion by denying the motion for
continuance that he filed eleven days before the final trial setting of
February 8, 2010.  At the hearing on the motion for continuance, Toby argued that
the trial should be continued because his counsel learned of the final trial
setting for the first time at a mediation held on January 27, 2010, and because
discovery was incomplete since the social study ordered by the trial court on
May 21, 2009, had not been performed or completed.  Toby raises the same
arguments on appeal.

          We
review a trial court’s ruling on a motion for continuance for an abuse of
discretion.  BMC Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 800
(Tex. 2002).  A trial court abuses its discretion when it reaches a decision so
arbitrary and unreasonable as to amount to a clear and prejudicial error of
law.  Id.

          The
party seeking a continuance bears the burden of demonstrating sufficient
cause.  See Tex. R. Civ. P. 251.  If a continuance is sought in order to
pursue further discovery, as Toby contends is the case here, the motion must
describe the evidence sought, explain its materiality, and show that the party
requesting the continuance has used due diligence to obtain the evidence.  Wal-Mart
Stores Tex., LP v. Crosby, 295 S.W.3d 346, 356 (Tex. App.—Dallas 2009, pet.
denied); see Tex. R. Civ. P. 252; Joe v. Two Thirty Nine Joint
Venture, 145 S.W.3d 150, 161 (Tex. 2004).  A trial court does not abuse its
discretion by denying a motion for continuance that does not meet the
requirements of rule 252.  Wal-Mart Stores, 295 S.W.3d at 356.

          Shelley
filed suit in September 2008 and served Toby with an amended petition in
November 2008.  The trial court entered a scheduling order in April 2009 that
set the final trial for February 8, 2010.  The order contains the signatures of
Shelley’s attorney and, according to Shelley, the signature of Toby’s previous attorney.[6] 
The signature of the attorney who represented Toby at trial and filed the
motion for continuance appears on the associate judge’s recommendation for
contempt, which was signed in September 2009—five months before the final trial
setting.  The trial court’s implied conclusion that Toby’s counsel’s apparent
failure to familiarize herself with the case file after months of representing
Toby did not constitute sufficient cause to warrant a continuance is not
arbitrary or unreasonable.  See BMC Software Belg., N.V., 83
S.W.3d at 800.

          Regarding
Toby’s argument that more time for discovery was needed because the social study
had not been completed, we first note that Toby claimed in the written motion
only that neither he nor his attorney were available for the final trial
because they each had other engagements.  The motion did not elaborate that
Toby needed additional time to pursue further discovery, including completing
the social study, nor did the motion describe the evidence sought, explain its
materiality, and show that Toby had used due diligence to obtain the additional
evidence.  See Wal-Mart Stores, 295 S.W.3d at 356.

          Moreover,
and notwithstanding the written motion’s fatal shortcoming, the trial court
ordered on May 21, 2009, that a social study be completed, but there is nothing
in the record to show that Toby exercised any diligence in seeking to somehow enforce
the order until eight months later and only eleven days before the final trial
setting.  Toby argues that the social study’s “materiality to the case is
extremely critical on the issue of conservatorship,” but the record shows that
Toby did not seek primary possession of the children until he filed—without
leave—a first amended original counterpetition for divorce just seven days
before the final trial.[7]  Notwithstanding that
Toby’s decision to seek primary possession of the children on the eve of trial
undercuts his materiality argument, the trial court struck Toby’s first amended
counterpetition.[8]

          We
hold that the trial court did not abuse its discretion by denying Toby’s motion
for continuance.  Accordingly, we overrule his first issue.

IV. 
Life Insurance, Costs of Travel, Reimbursement of Extracurricular Activities, and
Mortgage Payments

 

          In
his second issue, Toby asserts four arguments relating to his child support
obligation.  We review a trial court’s decision on child support for an abuse
of discretion.  See Rodriguez v. Rodriguez, 860 S.W.2d 414, 415 (Tex.
1993).

          A.      Life
Insurance

          The
decree orders “that, as additional child support, [Toby] shall, at his sole
cost and expense until all children have reached the age of 18 and graduated
from high school, maintain a term life insurance policy in the sum of $100,000.00,
naming [Shelley] as trustee for the benefit of the children.”  In the first subissue
of his second issue, Toby argues that the trial court abused its discretion by
ordering him to maintain a life insurance policy “as additional child support”
because the family code does not specifically authorize the premiums paid by a
child support obligor’s maintenance of a life insurance policy to be included “as
a child support obligation.”  Alternatively, in the event that monthly life
insurance premiums may be included in a calculation of net resources for
determining child support, Toby compares the costs of maintaining life
insurance to the costs of maintaining medical support and argues that the trial
court erred by not deducting the costs of monthly life insurance premiums from
his resources in determining the amount of his net resources for purposes of calculating
his monthly child support obligation.  See Tex. Fam. Code Ann. § 154.062(d)(5)
(West Supp. 2010).

          Family
code section 154.016, entitled “Provision of Support in Event of Death of
Parent,” provides that the “court may order a child support obligor to obtain
and maintain a life insurance policy, including a decreasing term life insurance
policy, that will establish an insurance-funded trust or an annuity payable to
the obligee for the benefit of the child that will satisfy the support
obligation under the child support order in the event of the obligor’s
death.”  Id. § 154.016(a) (West 2008) (emphasis added).  In
determining the “nature and extent of the obligation to provide for the support
of the child in the event of the death of the obligor,” the court must
consider “all relevant factors,” including “the present value of the total
amount of monthly periodic child support payments.”  Id. § 154.016(b)(1)
(emphasis added).

          The
provision in the decree requiring Toby to maintain a term life insurance policy
for the benefit of his three children is authorized by and derived from section
154.016.  That statute makes clear that the purpose of maintaining a term life
insurance policy is to ensure that a child support obligation is met after
the obligor’s death.  It is only in this context—after the obligor dies—that
section 154.016 addresses support.  There is nothing in section 154.016 or in
section 154.062 that permits or requires life insurance premiums to be included
in determining net resources for purposes of figuring child support liability. 
See id. § 154.062(b), (c), (d).  Considering the decree as a whole,
the trial court’s findings of fact and conclusions of law, and section 154.016,
it is apparent that the decree’s requirement that Toby maintain a term life
insurance policy “as additional child support” is nothing more than an attempt to
implement a provision in the decree that is consistent with section 154.016(a). 
See Holmes v. Holmes, No. 03-08-00791-CV, 2010 WL 3927593, at *7 (Tex.
App.—Austin Oct. 5, 2010, no pet.) (mem. op.) (reasoning that trial court has
discretion to order child support obligor to purchase life insurance policy as
additional child support).  Toby argues that the trial court “should have
provided for a decreasing term life insurance policy,” but section 154.016(a)
unambiguously does not so require.  See id. § 154.016(a) (stating
that an obligor may be ordered to maintain a life insurance policy, “including
a decreasing term life insurance policy”) (emphasis added).  We overrule the
first subissue of Toby’s second issue.

          B.      Costs
of Travel

          In
the second subissue of his second issue, Toby argues that the trial court
should have provided for “a downward variation from the strict application of
the [child support] guidelines” because of the costs that he will incur
travelling between McAllen and Tarrant County to exercise possession of the
children.  He contends that because the trial court determined that he had net
resources of $7,759.40 per month, assessed $137.67 for the monthly cost of
health insurance, and applied the child support guidelines (30%) to the first
$7,500 of his net resources, he is left with only $121.73 to use for travel
expenses to exercise possession.  We do not understand Toby’s argument. 
Accounting for child support in the amount of $2,250 and for health insurance
in the amount of $137.67, Toby has over $5,000 in net resources remaining per
month.  Considering this and the remainder of the record, we cannot conclude
that the trial court abused its discretion in its order of child support.  We
overrule the second subissue of Toby’s second issue.

          C.      Reimbursement
of Extracurricular Activities

          The
decree orders Toby to reimburse Shelley for “50% of all of the children’s
extracurricular organized activities[,] including but not limited to
extracurricular sports activities.”  In the third subissue of his second issue,
Toby argues that there is no statutory authority for this ruling, that Shelley
presented no evidence regarding the children’s extracurricular activities or
that any such activities are necessary, and that “this ground for recovery does
not support the judgment” because “there is no finding of fact to support the
reimbursement for the children’s extracurricular activities.”

          Family
code section 154.126(a) provides as follows:

          (a)  If the
obligor’s net resources exceed the amount provided by Section 154.125(a), the
court shall presumptively apply the percentage guidelines to the portion of the
obligor’s net resources that does not exceed that amount.  Without further
reference to the percentage recommended by these guidelines, the court may
order additional amounts of child support as appropriate, depending on the
income of the parties and the proven needs of the child.

 

Tex.
Fam. Code Ann. § 154.126(a) (West 2008).  The trial court found that Toby
had net resources of $7,759.40, and it presumptively applied the percentage
guidelines to the first $7,500 of Toby’s net resources.  Section 154.126(a)
authorized the additional extracurricular activities reimbursement requirement,
depending on the income of the parties and the proven needs of the children.

          The
needs of a child are not limited to the “bare necessities of life.”  Rodriguez,
860 S.W.2d at 417 n.3.  Rather, it is an ambiguous term that has never been
defined by the family code and has been left for the courts to determine in
their discretion on a case-by-case basis.  In re J.A.H., 311 S.W.3d 536,
542 (Tex. App.—El Paso 2009, no pet.).  In determining needs of the child,
however, courts must follow the paramount guiding principle:  the best interest
of the child.  Thomas v. Thomas, 895 S.W.2d 895, 897 (Tex. App.—Waco
1995, writ denied).

          Although
the record contains sparse evidence regarding the children’s extracurricular
activities, there is evidence that Toby took a trip to Cooperstown, New York, so
that the oldest son could participate in a baseball tournament.  Shelley
testified that they had been planning to take the trip for “a couple of years”;
therefore, the trial court could have concluded that the child regularly played
organized baseball.  As to the income of the parties, the trial court found
that Toby’s net resources were more than double the amount of Shelley’s net
resources and that Toby had received approximately $350,000 as an inheritance
during the course of the divorce proceedings.[9]  The trial court was not
required to make findings relevant to this issue.  See Yarbrough v.
Yarbrough, 151 S.W.3d 687, 692 (Tex. App.—Waco 2004, no pet.) (“Because the
percentage guidelines do not apply to net monthly resources exceeding [$7,500],
section 154.130 does not apply to child support awarded from those
resources.”).  We cannot conclude that the trial court abused its discretion by
determining that it was in the children’s best interest that Toby reimburse
Shelley for 50% of the children’s extracurricular activities.  Accordingly, we
overrule the third subissue of Toby’s second issue.

          D.      Mortgage
Payments

           In
the fourth subissue of his second issue, Toby argues that the trial court
abused its discretion by requiring him to pay 100% of the monthly mortgage
payment until the house is sold in light of the amount of his and Shelley’s
monthly net resources.[10]  He argues that
Shelley’s monthly net resources are not approximately $2,700, as the trial
court found, but that they actually amount to over $7,000 when considering that
Toby pays the $1,800 monthly mortgage payment and monthly child support in the
amount of $2,250.  Toby also argues that a “more realistic evaluation” of his monthly
net resources is that they total approximately $3,500 after deducting the
mortgage payment and his child support obligation from the trial court’s
finding of $7,759.40.

          Toby’s
net resources calculations disregard family code section 154.062, which lists
resources, items not included in resources, and deductions from resources for
purposes of calculating net resources in determining child support liability.  See
Tex. Fam. Code Ann. § 154.062(b), (c), (d).  No part of section 154.062
identifies a mortgage payment or a child support obligation as a non-resource
or as an item that may be deducted from resources.  See id. at § 154.062(c),
(d).  The lone case that Toby cites is inapposite because it addresses whether
the trial court abused its discretion by considering a child support obligor’s
payment of a note as a relevant factor in justifying an award of support
outside of the range recommended by the guidelines.  See Sanchez v. Sanchez,
915 S.W.2d 99, 102–03 (Tex. App.—San Antonio 1996, no writ).  In this case, the
trial court found that the amount of child support awarded is in accordance
with the percentage guidelines of the family code.

          Further,
Shelley testified that her monthly net resources are approximately $3,000, and
one of her exhibits lists her monthly net pay at $2,654.  The trial court found
that Toby had received over $21,000 in bonuses, had removed $20,000 from a bank
account, had a “well-paid, executive level position at the time of trial,” and
had inherited approximately $350,000 during the divorce proceedings.  Although
the decree requires Toby to continue making the mortgage payments until the
residence is sold, it also orders that Shelley is responsible for 100% of the
utilities incurred on the property and for maintenance of the property costing
up to $100 per incident.  Considering this evidence and the remainder of the
record, we cannot conclude that the trial court abused its discretion by
requiring Toby to pay 100% of the monthly mortgage payment.  We overrule the
fourth subissue of Toby’s second issue.[11]

V.  First Weekend Period of Possession

          In
his third issue, Toby argues that the trial court abused its discretion by
ambiguously ordering that “the 1st weekend period of [Toby’s]
possession each month shall occur in the DFW metroplex area or wherever the
children are residing with [Shelley].”[12]  He contends that there
is no evidence or finding that supports the order and that it is unclear (a) whether
the order requires him to exercise his possession during only the first
calendar weekend of each month when he also has the option of electing to
exercise possession during one weekend per month of his choice, (b) whether the first
weekend of his possession may occur on the third or fifth weekend if he is
unable to exercise possession on the first or third weekends, and (c) whether
exercising possession during the first weekend of the month in the DFW
metroplex “is a condition precedent each month for the 3rd and 5th
weekends to occur in McAllen.”

          In
Shanks v. Treadway, the supreme court explained,

When interpreting a
divorce decree, courts apply the general rules regarding construction of
judgments.  Judgments should be construed as a whole to harmonize and give effect
to the entire decree.  “[I]f the decree, when read as a whole, is unambiguous
as to the property’s disposition, the court must effectuate the order in light
of the literal language used.”  If the decree is ambiguous, the court should
review the record along with the decree to aid in interpreting the judgment. 
In addition, if a judgment is ambiguous—that is, subject to more than one
reasonable interpretation—courts should adopt the construction that correctly
applies the law.  As with other written instruments, whether a divorce decree
is ambiguous is a question of law.

 

110
S.W.3d 444, 447 (Tex. 2003) (internal citations omitted).

          Applying
these rules of construction, the decree unambiguously provides that Toby is
required to exercise the first weekend of his possession in the DFW
metroplex or wherever the children are residing with Shelley.  The decree does
not require Toby to exercise possession during only the first weekend of the
month, does not prohibit Toby from electing to exercise possession during one
selected weekend per month, does not prohibit Toby from exercising his first
weekend of possession on the third or fifth weekends, and does not make
exercising possession on the first weekend of the month in the DFW metroplex a
condition precedent to exercising possession during the third and fifth
weekends in McAllen.  None of Toby’s proposed interpretations of the decree are
reasonable.

          The
trial court found that “[t]he periods of possession [o]rdered[] are in
substantial compliance with the Standard Possession Order[] for conservators
who live in excess of 100 miles of each other,” but it deviated from the
standard possession order by requiring the first weekend of Toby’s possession
to occur in the DFW metroplex or wherever the children are residing with Shelley.
 When deviating from the standard possession order, the trial court looks to
the standard possession order guidelines and may also consider the age, developmental
status, circumstances, needs, and best interest of the child; the circumstances
of the joint managing conservators; and any other relevant factor.  Tex. Fam.
Code. Ann. § 153.256 (West 2008).  A trial court has broad discretion in
determining the best interest of a child in family law matters such as custody,
visitation, and possession, and we review a decision to modify possession for a
clear abuse of discretion.  Gillespie v. Gillespie, 644 S.W.2d 449, 451
(Tex. 1982).

          The
trial court found that Toby resides 525 miles from the residence of the
children and that “[t]he distance between the residences of the parents
requires accommodations so that the parents and the children are not required
to travel excessively.”  Shelley testified as follows about the excessive
travel time between Hurst and McAllen:

Q.  How long is the
travel time for each jog [between Hurst and McAllen]?

 

A.  Thinking eight
hours.

 

Q.  Is it eight hours
one way or eight hours both ways.

 

A.  One way.

 

Q.  That’s a long
drive, don’t you think?

 

A.  Uh-huh.

 

In
light of this evidence, and considering the possession order and the age,
developmental status, and circumstances of the children, the trial court could
have reasonably concluded that it would not be in the best interests of the
children to travel for at least sixteen hours by car every other weekend.  See
Tex. Fam. Code Ann. § 153.002 (West 2008) (“The best interest of the child
shall always be the primary consideration of the court in determining the
issues of conservatorship and possession of and access to the child.”).  We
hold that the trial court did not abuse its discretion by ordering Toby to
exercise the first weekend of his possession in the DFW metroplex or wherever
the children are residing with Shelley.  We overrule Toby’s third issue.

VI.  Division of Community Estate

          In
his fourth issue, Toby asserts three arguments relevant to the trial court’s
division of the community estate.

          A.      Mortgage
Payments Pending Sale of House

          In
the first subissue of his fourth issue, Toby argues that the trial court
“effectively awarded Shelley a portion of Toby’s separate property by ordering
him to maintain the mortgage payments on the marital homestead pending sale
while providing her with the exclusive right to occupy said residence and
without any provision for reimbursement.”  Toby contends that requiring him to
pay the mortgage after the divorce has been granted requires him to pay money
from his earnings that are clearly separate property.

          A
trial court has broad discretion in making a “just and right” division of the
marital estate.  Murff v. Murff, 615 S.W.2d 696, 698 (Tex. 1981).  It is
well established that the trial court has the authority to order the payment or
disposition of the community debts in its consideration and determination of
the division of the community estate.  Taylor v. Taylor, 680 S.W.2d 645,
648 (Tex. App.—Beaumont 1984, writ ref’d n.r.e.).

          Here,
the trial court merely assigned a portion of the community debt to Toby when it
ordered him to make the mortgage payments pending the sale of the residence.  See
generally Siefkas v. Siefkas, 902 S.W.2d 72, 76–77 (Tex. App.—El Paso 1995,
no writ) (“[W]e find that the assignment of the second mortgage to Appellant
merely assigns to him a portion of the community’s debt . . . .”). 
Toby may be required to expend post-divorce separate assets to comply with the
order, but this unavoidable consequence does not defeat the trial court’s duty
to account for the community debt as part of its division of the community estate. 
As explained by now-Chief Justice Stone in Johnson v. Johnson,

Richard argues that
the trial court erred in awarding to him the community property debt on the
couple’s van because . . . the satisfaction of the debt would come
from his separate property. . . .

 

                   . . . .

. . . [W]e
reject Richard’s contention that the court’s order constitutes an impermissible
division of his separate property.  As is often the case in divorce
proceedings, Richard and Colleen apparently had more community debt to divide
than community assets.  Under such circumstances, payment of community debts
after entry of a divorce decree will always require use of separate funds since
the community estate no longer exists.  Nonetheless, the community debts must
be paid, and if the parties cannot agree on who is to pay the debts, it is the
duty of the trial court to enter an appropriate order.

 

948
S.W.2d 835, 837–38 (Tex. App.—San Antonio 1997, writ denied).

          Toby
also argues that requiring him to make 100% of the mortgage payments “provides
no incentive for Shelley to sell the residence.”  The decree unambiguously
provides that he and Shelley have no choice but to list the property by a
certain date and to sell the property at a mutually agreeable price by a
certain date.

          We
hold that the trial court did not abuse its discretion by ordering Toby to make
mortgage payments pending the residence’s sale.  We overrule the first subissue
of Toby’s fourth issue.

          B.      Disproportionate
Division of Community Estate 

          In
the second subissue of his fourth issue, Toby argues that the trial court
abused its discretion by rendering a disproportionate division of the community
estate in favor of Shelley.[13]

          A
trial judge is charged with dividing the community estate in a “just and right”
manner, considering the rights of both parties.  Tex. Fam. Code Ann. § 7.001
(West 2006); Watson v. Watson, 286 S.W.3d 519, 522 (Tex. App.—Fort Worth
2009, no pet.).  The court has broad discretion in making a just and right
division, and absent a clear abuse of discretion, we will not disturb that
division.[14]  Jacobs v. Jacobs,
687 S.W.2d 731, 733 (Tex. 1985); Boyd v. Boyd, 131 S.W.3d 605, 610 (Tex.
App.—Fort Worth 2004, no pet.).

          Community
property does not have to be divided equally, but the division must be equitable. 
Kimsey v. Kimsey, 965 S.W.2d 690, 704 (Tex. App.—El Paso 1998, pet.
denied).  The trial court may consider the following non-exclusive factors,
among others, in determining whether the division of the community estate is
equitable:  (1) the spouse’s capacities and abilities; (2) education;
(3) the relative financial conditions and obligations of the parties; (4) size
of the separate estates; (5) the nature of the property; (6) disparities
in earning capacities and income; (7) fault of the breakup of the
marriage; and (8) any wasting of the community assets by one of the
spouses.  Murff, 615 S.W.2d at 699.  In determining whether to
disproportionately divide the community estate, the trial court may consider a
spouse’s dissipation of the community estate and any misuse of community
property.  Vannerson v. Vannerson, 857 S.W.2d 659, 669 (Tex.
App.—Houston [1st Dist.] 1993, writ denied).  When one spouse not only deprives
the other of community assets but does so with dishonesty and intent to
deceive, the trial court may consider such heightened culpability in its
division.  Schlueter v. Schlueter, 975 S.W.2d 584, 589–90 (Tex. 1998). 
A disproportionate division must be supported by some reasonable basis.  Smith
v. Smith, 143 S.W.3d 206, 214 (Tex. App.—Waco 2004, no pet.).

          The
trial court made the following findings:

30.     [Toby] had a
well-paid, executive level position at the time of trial.

 

26.     [Toby]
received over $21,000 in bonuses, as set forth on Petitioner’s Exhibit 36 . . . . 
[Toby] deposited only $6,000 of such bonuses into the trust account of
[Shelley’s] attorney prior to the trial date.

 

24.     [Toby]
received the sum of approximately $350,000 as inheritance during the course of
the divorce proceedings.

 

31.     [Shelley] had
not been employed outside the home for 3 years prior to separation, had a high
school education, and was the primary care-taker of the subject children.

 

The evidence
supports these findings.  Toby’s gross pay for 2009 was approximately $123,900,
and he acknowledged that he had earned bonuses in 2009 totaling at least
$20,000.  Shelley earned approximately $46,000 in 2009, and she now earns about
$3,000 per month.  Shelley became unemployed in September 2005 when her
employer relocated to Austin, but she began working again in February 2009,
several months after she initiated divorce proceedings against Toby.  Rhonda,
Toby’s sister, testified that she and Toby had each inherited between $320,000
and $350,000, and the executor of Toby’s father’s estate testified that there
is no limitation on the inheritance money.

          The
trial court made the following findings:

4.       [Toby]
committed adultery during the period of the marriage.

 

28.     [Toby] wrote
a check from a community account to his paramour.

 

32.     [Toby]
expended community assets for the use and benefit of a paramour for travel with
him on three separate occasions.

 

The
evidence supports these findings.  Toby testified that he began having an
affair with Tamatha M. sometime in August or September 2008, and he identified
Tamatha at trial as his “girlfriend.”  Toby confirmed that he had taken three
trips with Tamatha:  a $5,000 trip to Jamaica; a $3,000 to $5,000 trip to
Cooperstown, New York; and a trip to the Dominican Republic.  Toby acknowledged
that he had given Tamatha $620.

          The
trial court made the following findings:

  5.     [Toby] was
guilty of cruel treatment toward [Shelley].

 

35.     [Toby]
assaulted [Shelley] in the presence of the children and other members of his
family.

 

29.     [Toby] failed
to exercise his summer period of possession causing [Shelley] to incur
additional expenses of over $2,500.00.

 

The
evidence supports these findings.  Shelley and Rhonda testified about an
incident in July 2009 in which Toby pushed Shelley out of a door while at
Toby’s father’s residence; the children were crying.  Toby admitted that he had
been charged with assaulting Shelley over that incident.  Shelley testified
that Toby had the electricity turned off at the residence during Christmas
2008, forcing Shelley and the children to stay with Shelley’s aunt and uncle.  Toby
admitted at trial that he had Shelley’s Capital One credit card shut off after
Shelley confronted him and Tamatha at an airport in late October 2008.  He also
admitted that he had the cable, internet access, and telephone shut off at the
residence at one point.  During the course of the litigation, the trial court
held Toby in contempt for violating an order requiring him to overnight mail
one of the children’s prescriptions for Singulair that Toby had refused to
return to Shelley; to reimburse Shelley for expenses related to electrical,
phone, and cable services at the residence that he had caused Shelley to incur;
to forward all of his bonus checks to Shelley’s attorney for deposit in the
attorney’s trust account; and to pay to Shelley’s attorney fees in the amount
of $4,306.50.  Toby did not exercise his summer 2009 visitation with the
children, causing Shelley to incur costs associated with the children’s day
care, and he had possession of the children during Christmas 2009 for only one
and a half days.

          The
trial court also made the following findings:

27.     [Toby]
removed $20,000 from a bank account without providing an accounting of said
funds.

 

33.     [Toby] failed
to provide an accounting of Insurance Company income.

 

The
evidence supports these findings.  Shelley testified that in September or
October 2008, Toby removed $20,000 from a community bank account.  She also
testified that Toby had lied about not receiving any income from his insurance
business in 2009.  Shelley testified that Toby never gave her an accounting of
the $20,000 or of the bonuses that he received from his current job for 2009.

          Toby
challenges the trial court’s decision ordering him to pay 75% of the
community’s credit card debt.  He argues that this order essentially requires
him to pay for part of an abstract of judgment for approximately $13,000 that
was entered against Shelley in December 2005.  Toby contends that he knew
nothing about the judgment, that he had nothing to do with incurring the debt
upon which the abstract of judgment is based and, therefore, that the trial
court abused its discretion in dividing the community debt.  Shelley testified
that the abstract of judgment came about as a result of unpaid credit card
debt.  She testified that her credit card payments were overdue, that she could
not pay them, and that she disclosed the credit card debt to Toby but that he
refused to pay the debt, choosing instead to pay down his own debts at the time.
 When the abstract of judgment was entered, Toby and Shelley had been married
for approximately ten years, and Toby’s insistence at trial that he knew
nothing about the abstract of judgment was insufficient to overcome the
community property presumption—to the extent that Toby makes any such argument. 
See Tex. Fam. Code Ann. § 3.003(a), (b) (West 2006) (requiring clear
and convincing evidence to establish separate property character).

          A
reasonable basis supports the trial court’s disproportionate division of the
community estate in Shelley’s favor.  Accordingly, we hold that the trial court
did not abuse its discretion in its division of the community estate, and we
overrule the second subissue of Toby’s fourth issue.

          C.      Petitioner’s
Exhibit 36

          In
the third subissue of his fourth issue, Toby argues that the trial court abused
its discretion by admitting Petitioner’s Exhibit 36, a summary of the bonuses
paid to Toby in 2009 and deposited into Shelley’s attorney’s trust account. 
Toby argues that the trial court abused its discretion because Shelley failed
to establish the proper predicate for admitting the summary under rule of
evidence 1006.

          To
preserve a complaint for appellate review, a party must have presented to the
trial court a timely request, objection, or motion that states the specific
grounds for the desired ruling, if they are not apparent from the context of
the request, objection, or motion.  Tex. R. App. P. 33.1(a); see also
Tex. R. Evid. 103(a)(1).  If a party fails to do this, error is not preserved,
and the complaint is waived.  Bushell v. Dean, 803 S.W.2d 711, 712 (Tex.
1991) (op. on reh’g).

          Toby
objected to Petitioner’s Exhibit 36 on the lone ground that it was “not an accurate
summary, and I would ask that [Shelley’s attorney] submit all of the pay
stubs which will reflect all of the bonuses that were paid to Mr. Bowen.” 
[Emphasis added.]  Toby thus objected that the summary was inaccurate because
it was incomplete, not that Shelley had failed to lay the proper predicate for
admitting the exhibit, as he argues now on appeal.  Toby’s argument on appeal does
not comport with the objection that he asserted at trial.  Consequently, Toby
failed to preserve this issue for appellate review.  See Tex. R. App. P.
33.1(a).  We overrule the third subissue of Toby’s fourth issue.

VII.  Attorney’s Fees

          In
his fifth issue, Toby argues that the trial court abused its discretion by
awarding Shelley $23,000 in attorney’s fees in light of the factors that are
considered in dividing the community estate and the trial court’s failure to
consider “the fraud on the community estate resulting in the [Abstract of Judgment]”
and “the waste of community assets by Shelley.”

          The
trial court has great discretion in deciding whether to award attorney’s fees
to either party and in determining the amount of attorney’s fees to be so
awarded.   Mandell v. Mandell, 310 S.W.3d 531, 541 (Tex. App.—Fort Worth
2010, pet. denied); Grossnickle v. Grossnickle, 935 S.W.2d 830, 846
(Tex. App.—Texarkana 1996, writ denied).  It has the authority to award
attorney’s fees against a spouse in a divorce action as part of the equitable
power to make a fair division of the community estate.  Carle v. Carle,
149 Tex. 469, 474, 234 S.W.2d 1002, 1005 (1950).  Because the award of
attorney’s fees in a divorce case can be part of the property division, the
trial court can award them to either party, regardless of who is successful in
the trial court or on appeal.  Grossnickle, 935 S.W.2d at 846.  An
attorney’s testimony alone can be sufficient evidence to support the award.  Peeples
v. Peeples, 562 S.W.2d 503, 506 (Tex. Civ. App.—San Antonio 1978, no writ).

          The
trial court awarded attorney’s fees as part of its division of the estate.  It found
that the following factors were considered in arriving at a just and right
division of the community estate:

j)        The
attorney’s fees paid [by Toby] to different attorneys during the course of the
case totaling approximately $75,000.00 by his own testimony; and

 

k)       The
reasonable and necessary attorney’s fees, costs and expenses incurred by
[Shelley] in this case and an award of $23,000.00 in attorney’s fees to be paid
by [Toby] for the benefit of [Shelley].[[15]]

 

          In
addition to all of the evidence discussed above in the analysis of the second
subissue of Toby’s fourth issue, which sets out evidence supporting the trial
court’s community property division, the trial court found as follows:

34.     [Toby] filed
untimely appeals of the Associate Judge’s rulings, thwarting the orderly
procedure of the Court and causing [Shelley] additional financial hardship.

 

36.     [Toby] was
found in contempt of Court on September 10, 2009, . . . .

 

37.     [Toby]
contested the paternity of the youngest child during the final trial, although
the case had been pending for a year and a half before this allegation,
necessitating a delay in the finalization of this case and additional
expenditure of community assets.

 

          Shelley’s
attorney testified that she had incurred in excess of $36,000 in attorney’s
fees but that she had only been paid $17,000.  According to her, “[she] would
estimate that the majority of the $36,000 that [has] been incurred in this case
by my client [has] been as a direct result of [Toby’s] refusal to follow any of
the orders of this Court.”

          We
hold that the evidence supports the award of attorney’s fees and that the trial
court did not abuse its discretion by awarding attorney’s fees to Shelley in
the amount of $23,000.  We overrule Toby’s fifth issue.

VIII.  Attorney’s Fees Statement

          In
his sixth issue, Toby argues that the trial court abused its discretion by
awarding attorney’s fees “which were necessary as support of [Shelley] and the
children the subject of this suit” because an award of attorney’s fees “cannot
be awarded on the basis of support of either the spouse or the children.”  The
trial court’s award of attorney’s fees has nothing to do with child support. 
The complained-of sentence, which is contained in the portion of the decree
stating that good cause exists to award Shelley attorney’s fees, is merely a
statement recognizing that Shelley incurred attorney’s fees and nothing else. 
We overrule Toby’s sixth issue.

IX.  Shelley’s Motion for Payment of Mortgage
Payments

          Shelley
filed a motion requesting that we abate this appeal to permit the trial court
to consider Toby’s alleged failure to make monthly mortgage payments.  See
Tex. Fam. Code Ann. § 9.007(a), (c) (West 2006).  We deny the motion
because it is moot as of the date of this opinion.

X.  Conclusion

          Having
overruled all of Toby’s issues, including his numerous subissues, we affirm the
trial court’s judgment.

 

BILL MEIER
JUSTICE

 

PANEL: 
DAUPHINOT,
GARDNER, and MEIER, JJ.

 

DELIVERED:  August 4, 2011









[1]See Tex. R. App. P. 47.4.





[2]Contrary to Shelley’s
testimony, Toby recalled that the entire family had planned to move to McAllen.





[3]Shelley testified that
Toby earned bonuses in 2009 totaling approximately $26,000.





[4]According to Shelley, she
“didn’t want to serve him to begin with, but then he had an affair.  I had no
choice.”





[5]The $2,250 child support
liability equals 30% of the first $7,500 of Toby’s net resources, which totaled
$7,759.40.





[6]Toby does not contest
Shelley’s factual statement that Toby’s previous attorney signed the scheduling
order.  See Tex. R. App. P. 38.1(g).





[7]The pre-trial docket
control scheduling order non-jury docket required that amended pleadings be
filed by July 24, 2009.





[8]Toby argues for the first
time in his reply brief that the trial court abused its discretion by striking
his first amended counterpetition.  This argument is waived.  See Cebcor
Serv. Corp. v. Landscape Design & Constr., Inc., 270 S.W.3d 328, 334
(Tex. App.—Dallas 2008, no pet.) (“[A] party may not present arguments for the
first time in its reply brief.”).





[9]Toby argues for the first
time in his reply brief that the trial court abused its discretion by
considering his inheritance in its division of the community estate.  This
argument is waived.  See Cebcor Serv. Corp., 270 S.W.3d at 334.





[10]The trial court found
as follows:

 

25.     The community
estate . . . was comprised primarily of personal property of a de
minimis value, two vehicles the parties had in their respective possession
prior to the initiation of the divorce action, and the marital residence
estimated to have a negative equity of approximately $20,000.00 by [Toby].  The
life insurance policies insuring the lives of each child were placed under the
control of [Toby], as were the college funds of approximately $25,000.00.

 

The Court finds that
the residence owned by the parties most likely has no equity.  [Toby] requested
the residence be sold.  The Court has ordered the house be sold, and, in the
event there is equity in the house, such equity should be split 75% to
[Shelley] and 25% to [Toby].  The Court finds that to help maintain the value
of the house, [Toby] should be ordered to pay the mortgage while the sale is
pending.





[11]To the extent that Toby
asserts any arguments in his second issue that are not addressed herein, those
arguments are waived as inadequately briefed.  See Tex. R. App. P.
38.1(i) (requiring brief to contain a clear and concise argument for the contentions
made with appropriate citations to authorities); Fredonia State Bank v. Gen.
Am. Life Ins. Co., 881 S.W.2d 279, 284 (Tex. 1994) (discussing
“long-standing rule” that issue may be waived due to inadequate briefing).





[12]In addition to this
provision, the decree awards Toby possession on the first, third, and fifth
weekends of the month and gives him the option of exercising possession not
more than one weekend per month on the weekend of his choice, upon ninety days’
written notice to Shelley.





[13]The trial court found
that “[t]he community assets of the parties should be divided in a
disproportionate manner.”





[14]In family law cases, the
traditional sufficiency standards of review overlap with the abuse of
discretion standard of review; therefore, legal and factual insufficiency are
not independent grounds of error but are relevant factors in our assessment of
whether the trial court abused its discretion.  Watson, 286 S.W.3d at
522.  To determine whether there has been an abuse of discretion because the evidence
is legally or factually insufficient to support the trial court’s decision, we
must determine whether the trial court had sufficient evidence upon which to
exercise its discretion and whether the trial court erred in its application of
that discretion.  Id. at 522–23.  The legal and factual sufficiency
standards of review are well established.  See Cent. Ready Mix
Concrete Co. v. Islas, 228 S.W.3d 649, 651 (Tex. 2007); City of Keller
v. Wilson, 168 S.W.3d 802, 807, 827 (Tex. 2005); Uniroyal Goodrich Tire
Co. v. Martinez, 977 S.W.2d 328, 334 (Tex. 1998), cert. denied, 526
U.S. 1040 (1999); Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex.
1986) (op. on reh’g); Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965).





[15]The trial court found
that the community assets should be divided in a disproportionate manner based,
in part, on the “attorney’s fees paid from community funds and attorney’s fees
due.”