# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00039-CV

---

**Elizabeth Weston, Appellant**

**v.**

**Graham Weston, Appellee**

---

### FROM THE 22ND DISTRICT COURT OF COMAL COUNTY
### NO. C2020-1814A, THE HONORABLE DIB WALDRIP, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Elizabeth Weston appeals from the trial court's final decree of divorce dissolving her marriage to Graham Weston and dividing their community estate. We will affirm the trial court's decree.

## BACKGROUND

In October 2020, Elizabeth[1] filed a petition for divorce. Graham filed a counterpetition for divorce seeking, among other things, confirmation of his separate property. Elizabeth amended her petition four times, ultimately alleging claims for breach of fiduciary duty and fraud. The case was eventually tried to a jury after pending for almost two years; the issues at

---

[1] Because the parties share a surname, we will refer to them by their given names for clarity.

trial principally involved separate property claims and valuation and division of a large community estate. The trial court appointed a special master to assist with many discovery disputes resulting in the parties' filing motions to compel and motions for protective orders. Relevant to Elizabeth's appeal, in April 2021 the trial court held a hearing on motions to compel filed by both Elizabeth and Graham. Elizabeth sought to compel production of bank and other financial records dating back 26 years to 1994, the year Elizabeth and Graham married. Elizabeth's counsel argued that because Elizabeth and Graham married on December 31, 1994, records from that date forward were relevant to the division of the community estate. Counsel for Graham requested that the court initially set a shorter period for discoverable financial records and, if specific transactions warranted discovery from an earlier period, permit targeted discovery on those specific transactions. Graham's counsel explained:

> [T]he idea that you go back 26 years for everything you have, that's probably overbroad. I mean most of what happened 26 years ago makes no difference. So it makes more sense to start out with what may be a three- or a five-year period. And then after you evaluate that—have your forensic accountant evaluate that, they say, well, this particular transaction occurred 12 years ago and I want to see that. Okay. Well then, we go look up what we have on that transaction.

Graham's counsel stated that, in his personal experience with large estates, the standard practice was to start out with a shorter period and, if there is reason to go back in time to review particular issues or transactions, conduct further investigation regarding the issue or transaction. The trial court determined that the discovery period would initially be from January 1, 2015, forward but stated that any party could seek discovery from earlier periods as to specific transactions. The court stated: "And obviously, both sides can come to me and say we need to do something beyond that date or prior to that date and I'll certainly listen." Close to a year later, Elizabeth filed a motion

2

to modify the court's discovery order, arguing that permitting discovery "to at least as far back as the union of the parties on December 31, 1994, [was] necessary and proper" to effectuate a just and right division of the community estate. Rather than identify specific transactions or issues warranting further investigation, Elizabeth again requested the court to permit global discovery of financial records dating back to December 31, 1994. By this time, the court had appointed a special master for discovery issues. The master held a hearing on Elizabeth's motion. At the hearing, Elizabeth's then-counsel stated that the parties had agreed to conduct earlier discovery on some issues and had resolved some individual discovery disputes. The master denied Elizabeth's request to change the discovery cutoff date of January 1, 2015, but reiterated that any party could come back to the court and seek further discovery as to specific transactions. The master proposed a procedure called "Request for Discovery Prior to 2015 for Specific Items" pursuant to which Elizabeth's counsel could request specific items prior to the 2015 cutoff date and explain the need for further discovery. Graham's counsel agreed to respond to any such requests within a week, and counsel for Elizabeth and Graham agreed to the discovery process. The record does not indicate, however, that Elizabeth or her counsel ever made such a request or asked the court for discovery of specific financial records prior to the 2015 cutoff date.

As the case proceeded, Elizabeth was represented by more than 20 different attorneys from different law firms. In June 2022, Elizabeth's last four sets of lawyers moved, and were permitted by the court, to withdraw from the representation. Although not thereafter represented by counsel, Elizabeth repeatedly informed the court at hearings that she "was not appearing pro se" and that she "did not wish to proceed without counsel." The court advised Elizabeth that if the obstacle to retaining counsel was financial, she should move for temporary orders to provide her with additional funds as the court could not act sua sponte. Elizabeth never

3

retained new counsel in the trial court, did not provide the court with information about her attempts to do so, and did not suggest a revised scheduling order or other accommodation that would enable her to retain counsel. Instead, she continued to state her objection to proceeding without counsel and insisting that she was not appearing pro se.

In May 2022, when Elizabeth was still represented by counsel, Graham moved to strike sixteen of her nineteen designated testifying experts, arguing that the designations were inadequate and no reports had been produced. On June 21, 2022, the court extended the deadlines for filing expert disclosures, set deadlines for Elizabeth and Graham to notice depositions of fact witnesses, and set dates for the depositions of experts. All but one of Elizabeth's experts failed to appear for deposition, and Elizabeth would not authorize the one expert who did appear for his deposition, Nick Mears, to answer questions. In his deposition, Mears stated:

> I am sorry. While I am making a physical appearance today, ready, willing, and able, it is my understanding the client has not given counsel authorization for me to proceed. So while present and willing, I will not be proceeding for the deposition today.
>
> I wanted to be here, like I said, ready, willing, and able, hopeful in the event that everyone would be cooperating. So if I did have authorization, I would be here giving my deposition here today.

Mears further informed Graham's counsel that, because not authorized to do so by Elizabeth, he would not answer any questions about the work he was retained to perform or any related analysis.

On July 22, 2022, the court ordered Elizabeth to present two of her retained experts for depositions during the week of July 25 at one of three designated locations. When Elizabeth failed to present the experts for depositions as ordered, Graham again moved to strike the experts'

testimony at trial. The court heard arguments on the motion to strike Elizabeth's experts on August 8, 2022, five weeks before the trial setting. Graham's counsel explained to the court:

> At a high level, I would say to the Court that Mrs. Weston has been given numerous chances to accomplish the discovery, many of those chances occurring while she was represented by counsel. Others have occurred since then. But this is a longstanding, repeated problem that has occurred in this case about discovery.
>
> And as we've been quite transparent with the Court, we've asked you to do things in the past in the nature of building a track record and building blocks of sanctions that we told the Court and Mrs. Weston that we were going to—at some point come to you and ask you to strike these experts from the record and her ability to use them at trial. That is today. We are now at that point, Judge.

Graham's counsel then detailed the history of unsuccessful attempts to obtain discovery from Elizabeth's experts. In response to Graham's counsel's argument, Elizabeth stated that "I cannot proceed further because I do not have the law—I do not have an attorney," and that she "could not proceed further." When asked if she wanted to provide any testimony at the hearing, Elizabeth stated that she "cannot proceed under oath without an attorney." After the hearing, the trial court signed an order directing Elizabeth to provide dates for expert depositions and produce their reports by August 19, 2022, or their testimony would be stricken. Elizabeth did not comply with the court's order and Graham filed another motion to strike her experts. After a hearing, the court granted the motion and struck the testimony of Elizabeth's experts.

A similar series of events resulted in the trial court's ordering that Elizabeth would not be permitted to testify as a witness at trial. The court had previously ordered that Elizabeth and Graham would be deposed in two stages with the first stage being limited to nonfinancial matters. After Elizabeth filed motions to quash two notices of deposition Graham served on her, Graham moved to compel her deposition and asked the court to set a date for the deposition. After

the court ordered that Elizabeth's stage one and stage two depositions take place on August 1 and August 3, 2022, Graham served her with notices. Elizabeth appeared for the first deposition but refused to answer any questions, instead asserting as a blanket objection that she "was not representing herself," "wanted a lawyer," and could not "go forward" with the deposition without counsel. Elizabeth appeared for the second deposition but left the room after Graham's counsel asked her to state her name for the record. Graham then filed a motion for sanctions, which the court heard on August 8, 2022. The court signed an order directing Elizabeth to appear for depositions on August 22 and 23 and further ordered that the special master attend the deposition to "make rulings as any disputes arise." When Elizabeth failed to comply with the court's order, Graham again filed a motion for sanctions asking the court to either strike Elizabeth's pleadings or limit her trial testimony to what she had stated at her August 1 deposition. After a hearing on that motion, the court declined to strike Elizabeth's pleadings but ordered her to appear for depositions on September 6 and 7 and cautioned her that if she did not participate in the deposition her testimony would be stricken from the trial. Elizabeth did not comply with the court's order and her deposition did not go forward.

In July 2022, Graham filed a motion for partial summary judgment that his interests in certain family trusts were his separate property. The motion was supported by trust documents and sworn declarations of Graham and one of his expert witnesses who traced the trusts and their assets from inception through the present. Although the trial court provided Elizabeth an extension of time to respond to the summary judgment motion, she failed to do so. The court signed an order granting the motion for summary judgment and rendered judgment that the trusts were Graham's separate property and therefore could not be considered in the division of the community estate. Graham filed a second set of summary judgment motions in August 2022, asking the court to

6

confirm that certain assets, business interests, and real property constituted his separate property. As were the earlier motions for summary judgment, these were supported by sworn declarations of expert witnesses who traced the assets, business interests, and real property from inception through the present. Elizabeth responded by filing a motion for continuance of the summary judgment hearing on the ground that her counsel had been permitted to withdraw from representing her and asserting that her prior counsel committed legal malpractice. Elizabeth asked the court for a continuance of any proceedings related to the case until she had obtained replacement counsel; something she had been advised repeatedly by the court to do and had provided no information to the court about what efforts she had undertaken to secure replacement counsel. Elizabeth submitted no summary judgment evidence related to the issues presented in Graham's motions. After a hearing, the court granted the second set of summary judgment motions.

The case was set for trial on September 21, 2022, its seventh trial setting. The day before the trial, Elizabeth moved to recuse the trial judge, complaining mainly that she was prejudiced by her previous counsels' withdrawals and that she should not be required to proceed to trial without representation. Elizabeth again alleged that her previous counsel had committed legal malpractice. Graham countered that Elizabeth's motion was procedurally and substantively defective and complained mainly of the trial court's rulings, which Graham maintained was not a ground for recusing a judge. The motion was referred to a former Travis County district judge who, after a hearing, denied the motion to recuse.

On September 21, the court held a pretrial hearing to determine whether Elizabeth was represented by counsel or would proceed pro se. Elizabeth informed the court that she had not been able to retain counsel to represent her in the proceeding and, although she objected to it on the ground that it violated her due process rights, Elizabeth stated that she was appearing pro se.

7

The court then took up Graham's motion in limine, which included requests to exclude testimony from any of Elizabeth's expert witnesses whose testimony had been stricken or who were not timely disclosed and to exclude testimony from anyone not on a witness list that Elizabeth was to have provided by September 14. The court granted the motion in limine. The court determined that because it had previously stricken Elizabeth's expert witnesses' testimony as well as any testimony from Elizabeth not given in a deposition, and because Elizabeth had failed to provide a witness list, the result was that Elizabeth could not call any witnesses at trial.

The court then proceeded to conduct voir dire, during which Elizabeth questioned potential jurors regarding their experiences with divorce and other matters. A jury was seated and the court asked Elizabeth "what witnesses would we anticipate being called that have been properly noticed?" Elizabeth stated that she had no witnesses to call, and the court sent the jury back to the jury room. Elizabeth then rested her case, and Graham moved for a directed verdict on Elizabeth's affirmative claims against him, including claims of fraud, breach of fiduciary duty, and promissory estoppel. The court granted a directed verdict as to all of Elizabeth's affirmative claims.

The issue of valuation of community assets was then tried to the jury. Graham presented testimony from business valuation expert John Camp; forensic accountant Cynthia Nguyen; Graham's counsel Veronica Wolfe, who testified regarding Graham's claim for waste and excessive attorneys' fees he asserted was caused by Elizabeth and her counsels' conduct; and Graham's counsel Richard Orsinger, who testified regarding the reasonableness and necessity of Graham's legal fees in the case and provided additional testimony regarding Graham's claim for waste and excessive attorneys' fees caused by Elizabeth and her counsel's conduct.

The jury rendered its verdict on the character and valuation of the marital assets. The jury found that Graham was entitled to reimbursement from the community estate in the

amount of approximately $6.7 million and found that the community estate was entitled to $8 million because of Elizabeth's waste of community assets. The jury did not determine the division of the marital estate—that issue was tried to the court. Graham testified to the court regarding his proposed property division, confirming that he was proposing that Elizabeth receive 100% of the value of the community estate (approximately $13.6 million). Graham then tried to testify regarding the division of the parties' personal property. Elizabeth objected on the ground that she needed more time to prepare, and the court postponed the hearing until October 12. Graham had provided a list of their personal property with his proposal for its division and the court asked Elizabeth to review the list in advance and identify any items that she would not object to being awarded to Graham. Elizabeth failed to do so, and at the October 12 hearing the court and the parties discussed the disposition of the items of personal property. Elizabeth objected to every proposal Graham made, including proposals to give her 100% of certain community assets. The court ultimately divided the community estate in a manner it found to be just and right and granted the divorce.

The court signed the Final Decree of Divorce on October 21. The decree divided the community estate and confirmed separate property of Elizabeth and Graham. The court also divided the parties' personal property including furniture, firearms, gym equipment, books, and art. The court also filed extensive findings of fact and conclusions of law including:

> FOF 129: On September 26, 2022, [Graham] offered his proposal to divide the community estate and testified that he wanted [Elizabeth] to receive 100% of the community value as indicated on his proposal, which was admitted as Exhibit 13.
>
> FOF 130: On October 12, 2022, the Court gave the parties the opportunity to provide testimony on the *Murff* factors. [Graham's] counsel stated testimony on *Murff* factors was unnecessary because [Graham] proposed to give [Elizabeth] 100% of the community estate. [Elizabeth] declined to give any testimony despite

9

the opportunity to do so.

FOF 131: The Court took into consideration the below factors in making a determination of a just and right division. The Court finds that the following is a just and right division of the parties' marital estate, having due regard for the rights of each party, including based on the following findings of the jury:

  a. [Graham] contributed $6,252,217.13 of his separate property stock to Tuscany Partners, Ltd. (a community property entity);

  b. [Graham] paid $432,461.20 from his separate property funds to reduce community property debt; and

  c. [Elizabeth] committed constructive fraud or waste that depleted the community estate by $8,000,000.00.

FOF 159: Exhibit E on the Divorce Decree allocated the property listed in Exhibits 15, 16, and 17. [Graham] was awarded items he requested that were in [Elizabeth's] possession that [Elizabeth] did not request be awarded to her. [Graham] was awarded all personal property in his possession not listed in the Divorce Decree. [Elizabeth] was awarded all personal property she requested to keep from [Graham's] list, all items from [Carowest] Headquarters Storage, all items on Exhibit 17, and all personal property in [Elizabeth's] possession not listed in the Divorce Decree.

COL 27: As the Jury determined that [Elizabeth] committed actual or constructive fraud on the community, it calculated the value by which the community estate was depleted as a result of the fraud on the community and calculated the amount of the reconstituted estate. The Court divided the value of the reconstituted estate between the parties in a manner the Court deems just and right. Tex. Fam. Code § 7.009.

COL 29: During trial Respondent presented evidence to establish that the total marital estate subject to division by the Court is valued at $13,142,912. [Elizabeth] did not controvert this evidence. Of that amount, [Elizabeth] was awarded $14,202.620 (108.06% of the community estate), and [Graham] was awarded ($1,059,708) (-8.06% of the community estate).

COL 32: The division of the community estate is favorable to [Elizabeth].

This appeal followed.

10

**DISCUSSION**

Elizabeth, appearing pro se, filed an appellant's brief that fails in many respects to comply with the Texas Rules of Appellate Procedure. *See* Tex. R. App. P. 38.1(i) (brief must contain clear and concise argument for contentions made, with appropriate citations to authorities and to record). While Elizabeth's brief identifies six "Issues Presented," these issues are not supported by argument providing citations to authorities or to the record. Elizabeth's Argument section in her brief is approximately one page in length and cites to one case, *Zagorski v. Zagorski*, 116 S.W.3d 309 (Tex. App.—Houston [14th Dist.] 2003, pet. denied), to support the general statement that an appellate court will reverse a trial court's judgment when the trial court has abused its discretion in a manner that materially affects the just and right division of property. Elizabeth's argument section does not contain a single citation to the record, which is composed of a clerk's record of close to 9,000 pages and a 57-volume reporter's record. While courts construe the briefing standards liberally, they also require adherence to Rule 38.1's minimum requirements. *See, e.g.*, *Gonzalez v. VATR Const. LLC*, 418 S.W.3d 777, 784 (Tex. App.—Dallas 2013, no pet.) ("Appellate courts must construe briefing requirements reasonably and liberally, but a party asserting error on appeal still must put forth some specific argument and analysis showing that the record and the law support his contention."); *Urquhart v. Marsaw*, No. 05-19-00855-CV, 2020 WL 3046202, at *1 (Tex. App.—Dallas June 8, 2020, no pet.) (mem. op.) ("Adequate briefing relevant to the issues is minimally required for this Court to review the proceedings below."). This is the case even when the appellant is appearing pro se. *See id.* ("Initially, we must note a pro se litigant is held to the same standards as licensed attorneys and must comply with applicable laws and rules of procedure."). Additionally, courts are under no "duty to make an independent search of the record to determine whether an assertion of error is valid. *Borisov v. Keels*, No. 01-15-

00522-CV, 2016 WL 3022603, at *1 (Tex. App.—Houston [1st Dist.] May 26, 2016, pet. denied) (mem. op.); *see also Urquhart*, 2020 WL 3046202, at *1 (court "cannot speculate as to the substance of the specific issues appellant claims we must address" and "has no duty to perform an independent review of the record and applicable law to determine whether the error complained of occurred"). Inadequate briefing presents nothing for this court to review. *See Urquhart*, 2020 WL 3046202, at *1 ("Here, appellant's brief fails to meet the minimum requirements of rule 38.1. As such, nothing is preserved for our review.").

Despite Elizabeth's brief's shortcomings, we will address the issues we can discern she had raised in her statement of "Issues Presented" and review the record to determine whether the trial court abused its discretion in a manner that materially affected a just and right division of the marital estate. Specifically, we will determine (1) whether the trial court abused its discretion in setting a cutoff date for discovery of January 1, 2015, rather than December 31, 1994, as Elizabeth requested, and (2) whether the trial court abused its discretion by excluding Elizabeth's expert witness testimony at trial, leading to a directed verdict on her affirmative claims against Graham.[2]

---

[2] In doing so, we are guided by Elizabeth's reply brief, filed by an attorney she retained after the appellee's brief was filed in this appeal, which confirms that these are Elizabeth's chief complaints. We disagree, however, that the issues presented in Elizabeth's opening brief raised the question of whether the trial court erred by not granting Elizabeth's request to continue the trial until she secured legal representation, and we will not address that issue. *See* Tex. R. App. P. 38.1, 38.2; *Cebcor Serv. Corp. v. Landscape Design & Constr., Inc.*, 270 S.W.3d 328, 334 (Tex. App.—Dallas 2008, no pet.) ("a party may not present arguments for the first time in its reply brief"); *Yazdchi v. Bank One, Tex., N.A.*, 177 S.W.3d 399, 404 n.18 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (declining to consider arguments made for first time in reply brief).

*Discovery Cutoff*

As previously discussed, the trial court held a hearing in April 2021 on Elizabeth's motion to compel production of certain banking and financial records. The issue before the court was how far back in time could Elizabeth's request for such records go. Elizabeth contended that she should be permitted to discover records from the present back to December 31, 1994, when the parties married, because all such information was relevant. Graham proposed that the court set a shorter period for discovery in the first instance and, if specific transactions warranted it, Elizabeth could seek targeted discovery pertaining to the specific transaction. The court agreed that "a reasonable timeframe is appropriate" and ordered that discovery go forward for a six-year time period beginning January 1, 2015, and explained that any party could seek discovery from earlier time periods as to specific transactions. A year later, Elizabeth asked the court to reconsider its ruling and permit blanket discovery from December 31, 1994, to the present. Elizabeth did not, however, identify any specific transactions or items that she wished to investigate further or what category of documents she wanted to discover from the time period preceding January 1, 2015. The special master heard Elizabeth's motion and, again, explained that any party could seek earlier discovery as to specific transactions, but denied the motion for blanket discovery going back to December 31, 1994. The record also reflects that, before the motion to modify was filed, the parties did reach agreement regarding certain issues preceding the 2015 discovery cutoff date and that Graham had produced certain financial statements and tax documents dating back to 1998.

The special master suggested a process called "Request for Discovery Prior to 2015 for Specific Items" whereby Elizabeth's counsel could request discovery of specific items preceding the 2015 cutoff date and Graham's counsel would respond to that request within one week. Counsel for both parties agreed to the proposed discovery process, but neither Elizabeth's

counsel nor Elizabeth pro se made any such request or returned to the court to seek further discovery preceding the cutoff date. The trial court did not abuse its discretion by setting an initial discovery period going back to January 1, 2015, and allowing Elizabeth to seek further relevant discovery of specific transactions upon request to Graham or by order of the court. Elizabeth never availed herself of the process for obtaining further discovery and has not demonstrated that the trial court's discovery rulings constitute a basis for any reversible error.

### *Expert Witnesses' Testimony*

Elizabeth asserts that the trial court abused its discretion in excluding her expert witnesses' testimony at trial, which led to a directed verdict on her affirmative claims against Graham. She asserts that this effectively denied her a jury trial on her counterclaims. As described above, Elizabeth repeatedly refused to provide expert reports, tender experts for deposition, permit them to testify when they did appear, and refused herself to participate in her deposition. The court granted Elizabeth many extensions of time and opportunities to provide expert reports and tender experts for deposition. When she failed to do so, the court did not abuse its discretion in striking their testimony from trial. *See Fort Brown Villas III Condo. Ass'n v. Gillenwater*, 285 S.W.3d 879, 881-82 (Tex. 2009) (affirming trial court's exclusion of untimely disclosed expert and noting that "hard deadlines" established by discovery cutoffs ensure that evidence presented at summary judgment and trial are consistent); *Villegas v. Texas Dep't of Transp.*, 120 S.W.3d 26, 34-35 (Tex. App.—San Antonio 2003, pet. denied) (affirming trial court's decision to strike late-filed supplemental expert materials); *Matagorda Cnty. Hosp. Dist. v. Burwell*, 94 S.W.3d 75, 81 (Tex. App.—Corpus Christi-Edinburg 2002), *rev'd on other grounds*, 189 S.W.3d 738 (Tex. 2006) (per curiam) ("The exclusion of the evidence is the sole remedy for not timely supplementing

discovery."). Moreover, Elizabeth made no offer of proof describing even the general substance of the expected expert witness testimony to permit this Court to determine whether the excluded expert testimony was relevant on a material issue related to her counterclaims such that the exclusion of that testimony probably caused the rendition of an improper judgment. *See, e.g.*, *Watts v. Oliver*, 396 S.W.3d 124, 128-29 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

## CONCLUSION

Elizabeth has failed to demonstrate that the trial court abused its discretion in its division of the marital estate. We have also reviewed the extraordinarily voluminous record, including the testimony submitted to support Graham's motions for summary judgment confirming certain of his property to be separate property, the testimony regarding the valuation of various components of the marital estate, and the trial court's determinations of how to divide the parties' financial and tangible property. The court's determinations are supported by the evidence presented at trial as are the trial court's findings that the division of the marital estate favored Elizabeth. For these reasons, we affirm the trial court's final decree of divorce.

_____

Thomas J. Baker, Justice

Before Justices Baker, Triana, and Smith

Affirmed

Filed: August 30, 2024

15